# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### September 18, 2001 Session

## STATE OF TENNESSEE v. TRACEY DION PAYNE

**Direct Appeal from the Criminal Court for Davidson County**
**Nos. 99-B-1051; 99-B-1052      Seth Norman, Judge**

---

**No. M2000-02584-CCA-R3-CD - Filed August 16, 2002**

---

The defendant was convicted of two counts of rape of a child pursuant to a jury trial. He was charged with a total of four counts of rape of a child, with two counts per indictment. The trial court consolidated these two indictments for trial. However, the trial court dismissed one indictment due to certain improprieties that occurred during the testimony of one of the victims. For the aforementioned convictions, the trial court sentenced the defendant to serve an aggregate sentence of forty years, which was comprised of two consecutive twenty-year sentences. The defendant now brings the instant appeal challenging the sufficiency of the evidence supporting the defendant's conviction, the trial court's decision to consolidate the defendant's two indictments, and the trial court's failure to declare a mistrial at the close of the prosecutor's closing argument. After reviewing the record, we find that the trial court improperly consolidated the two indictments for trial and therefore reverse and remand this case for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Reversed and Remanded.**

JERRY L. SMITH, J., delivered the opinion of the court, in which GARY R. WADE, P.J. and DAVID G. HAYES, J., joined.

C. Dawn Deaner, Assistant Public Defender; and Jerrilyn Manning; and Amy D. Harwell, Assistant Public Defenders, (on appeal and at trail), for appellant, Tracey Dion Payne.

Paul G. Summers, Attorney General & Reporter; David H. Findley, Assistant Attorney General; Victor S. Johnson, District Attorney General; Bernie McEvoy, Assistant District Attorney General; and Sara Davis, Assistant District Attorney General, for appellee, State of Tennessee.

## OPINION

## Factual Background

The defendant was charged with four counts of rape of a child,[1] two counts for T.T.,[2] who was four years old at the time, and two counts for A.T., who was nine years old at the time. Both victims were daughters of the defendant's girlfriend. T.T. testified that the defendant put his penis in her mouth and touched his penis to her vagina. She told her mother of these events as soon as her mother returned home after work. A.T. testified that the defendant penetrated her anus with his penis and ordered her to put his penis in her mouth. She testified that she did not admit that these events had transpired to her mother until after she determined that she would not get in trouble for reporting the events. She determined that it would be safe to report these events when her younger sister had not been punished for reporting her rapes.

The defendant testified that he did not commit the alleged rapes. In fact, he testified that he cared for the victims and their siblings much as a parent would. When questioned about where the victims would get the idea to fabricate these allegations of rape, the defendant responded that he did not know why they would fabricate such stories, but that the victims' mother would discuss sex in front of her children, that she had a dildo that she carelessly left out, and that she had pornographic films in her house, one of which the defendant caught A.T. watching.

A medical expert who examined both A.T. and T.T. found no physical signs of sexual abuse in either child. However, the expert testified that the absence of physical signs of abuse does not rule out the possibility that the children were sexually abused; it is not unusual for there to be no physical signs of abuse, especially when the child is examined more than twenty-four hours after the alleged abuse, as was the case with both A.T. and T.T.

During T.T.'s testimony, T.T. whispered to a court officer that she wanted to take a break to see her mother, and the court officer conveyed the witness's request to the trial court. T.T. was then taken outside of the court room to the hallway in which her mother and other sequestered witnesses were waiting to testify. According to the testimony of the court officer, T.T. told her mother that she wanted her mother to come in the court room with her. During this ten-minute break, her mother reassured T.T. that she could be brave and testify without her mother present in the court room. The defendant moved for a mistrial on the basis that during this period of time two sequestered witnesses had contact with each other and that this contact could have affected T.T.'s testimony, as T.T.'s testimony after the break, which had previously been vague and non-committal, became more specific and damning to the defendant. Out of an abundance of caution, the court

---

[1] The defendant was originally charged with five counts of rape of a child, but the state moved to dismiss one count, and the trial court granted its motion.

[2] It is the policy of this Court not to identify minors involved in sexual abuse cases by name. Instead, we will identify the victims in this case only by their initials.

declared a mistrial as to the counts of rape of T.T., and the court instructed the jury to disregard the relevant testimony.

During the prosecutor's rebuttal to the defendant's closing argument, the prosecutor referred to T.T.'s case several times, despite the trial court's instruction to the jury that they were to ignore the evidence presented in support of T.T.'s case. The defendant objected, and the trial court instructed the prosecutor to refrain from making further references to T.T.'s case. The jury convicted the defendant on the two remaining counts of child rape, and the trial court sentenced the defendant to serve two consecutive ten-year sentences for each count.

The defendant now brings the instant appeal challenging his convictions on the basis that (1) the evidence is insufficient to support his convictions; (2) the trial court erroneously consolidated T.T. and A.T.'s cases; and (3) the trial court erroneously failed to declare a mistrial after the prosecutor improperly referred to T.T.'s case in his closing argument.  After reviewing the record and applicable case law, we find that the trial court erred by consolidating the two indictments for trial and therefore remand this case for a new trial.


**Sufficiency**


As mentioned supra, the defendant first asserts that the evidence introduced at trial is insufficient to support his convictions.  Specifically, he alleges that the evidence is insufficient because A.T. gave two contradictory statements regarding her allegation that the defendant ordered her to perform oral sex on him. The defendant further alleges that because A.T.'s testimony was the only proof introduced to support this allegation and because her contradictory testimony was not explained, the rule of cancellation applies and therefore there is insufficient evidence to support his conviction for that rape.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State.  State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992).  Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt."  State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).  Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom."  Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof.  State v. Tilson, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence."  Matthews, 805 S.W.2d at 779.

The defendant contends that there is insufficient evidence to support his conviction for the count of his indictment that charges him with having committed rape of a child when he ordered A.T. to put her mouth on his penis. Tennessee Code Annotated section 39-13-522(a) defines the rape of a child as "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if such victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-522(a). The defendant must act with intent, knowledge, or recklessness. Tenn. Code Ann. § 39-11-301(c). Sexual penetration includes "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." Tenn. Code Ann. § 39-13-501(7).

As aforementioned, the defendant argues that because A.T. gave contradictory accounts of whether the incident took place, the rule of cancellation applies, and thus the statements cancel each other out, leaving insufficient evidence to support the defendant's conviction. Our supreme court first articulated this rule in 1922, finding that in situations where a witness gives two contradictory accounts of an event and that witness's testimony is the only evidence to support a disputed fact, the two statements cancel each other out because the witness's "testimony to prove [the fact] is no stronger than his testimony to disprove it, and it would be mere caprice in a jury upon such evidence to decide it either way." Johnson v. Cincinatti, N.O. & T.P. Ry. Co., 240 S.W. 429, 436 (Tenn. 1922).

In the instant case, during her direct examination, A.T. testified as follows:

A: [A.T.]    I was in the living room watching cartoons and then he told me to come here. And then I went in the bathroom to see what he wanted. And then he said, "Get down on your knees." And then he said, "Get down on your knees and put your mouth on my penis, and move your mouth up and down."

Q [prosecutor]: When you went into the bathroom that time what did you see?

A:    His penis.

Q:    Can you tell me when you went into the bathroom was Tracy there?

A:    Yes.

Q:    Where was he?

A:    Laying down in the water.

Q:    Did he have clothes on or off?

A:    Clothes off.

Q:    What was [the] first thing that happened when you got to the bathroom?

A:    He told me to get down on my knees.

Q:    Okay. Did you do that?

A:    Yes.

Q:    Where did you kneel down?

A:    On the bathroom floor.

Q:    Did he say anything more to you?

A:    He said "Put your mouth around my penis and move your mouth up and down."

Q:          What did you do when he said that?
A:          I put my mouth on his penis.
Q:          Did he ever put his hands on any part of your body?
A:          No.
Q:          You said you put your mouth on his penis.  Can you tell me what that felt like on your body?
A:          It didn't feel right.
Q:          Okay.  What happened after that?
A:          And then after that something came down his penis.
Q:          I am sorry, you're going to have to speak up.
A:          Something came down his penis.
Q:          Did you say something came out?
A:          Yes.
Q:          Okay.  What did it look like?
A:          It was clear and it kind of looked like lotion.
Q:          Where did it go?
A:          Down on his hand and into the water.
Q:          What happened after that?
A:          Then I got out of the bathroom.

On cross-examination, A.T. testified as follows:

Q [defense counsel]:  And then you say another time you were at home with the kids watching cartoons.
A:          Yes.
Q:          And Tracy was in the bathroom.
A:          Yes.
Q:          And that's the same bathroom where you say he hurt you the first time.
A:          Yes.
Q:          And he was in there and you knew he was taking a bath.
A:          Yes.
Q:          He yelled for you to come in there.
A:          Yes.
Q:          And that's the same place where he had hurt you in there before.
A:          Yes.
Q:          And you went in the bathroom.
A:          Yes.
Q:          Did you tell one of the boys to go in there and see what he wanted?
A:          No.
Q:          You just went in the bathroom.
A:          Yes.
Q:          You weren't scared to go in?

A:     Yes.
Q:     But you went in.
A:     Yes.
Q:     And he told you to lean in the tub and put his penis in your mouth.
A:     Yes.
Q:     But you didn't do that.
A:     Yes.
Q:     You just walked right back out.
A:     Yes.
Q:     And after that time when he called you to come in the bathroom you didn't tell your mom.
A:     No.
Q:     You didn't even tell the day she was mad at Tracy and you knew he had left.
A:     No.

With this background, the defendant asserts that A.T.'s affirmative response to defense counsel's question, "But you didn't do that?" contradicts her earlier testimony that she did put her mouth around the defendant's penis after he told her to do so. However, when reading the colloquy as a whole, it appears that A.T.'s response did not mean that she was agreeing with defense counsel's assertion that she "didn't do that," but instead that she was asserting that yes, she did do that. This conclusion is consistent with the likely meaning of A.T.'s other responses to defense counsel's questions. For example, this victim responded affirmatively to the question, "You weren't scared to go in?" If read literally, her response could indicate that she meant yes, she was scared to go in. However, defense counsel's follow-up question, "But you went in," indicates that counsel understood her response to mean the exact opposite, i.e. that she was afraid, but entered anyway. When addressing the applicability of the rule of cancellation, this Court has held that the rule did not apply in an analogous situation where a victim's affirmative response could be interpreted as consistent testimony rather than contradictory testimony. See State v. Nathaniel Allen, No. E1999-02209-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 781, at **5-6 (Tenn. Crim. App. at Knoxville, Oct. 19, 2000). Furthermore, a consistent interpretation of A.T.'s answers is also supported by the fact that in closing argument, defense counsel did not point out this alleged inconsistency in A.T.'s testimony although the issue of the victim's credibility was paramount because her testimony was the only proof of the defendant's crime. Instead, defense counsel recounted the version of the crime that A.T. gave during her direct examination and used other means to persuade the jury that A.T.'s story was "incredible."

Under our duty to afford the state the strongest legitimate view of the evidence, we conclude that A.T.'s response could legitimately be construed as consistent in light of her other answers during that line of questioning and defense counsel's failure to point out the alleged inconsistency in his closing arguments. Therefore, the rule of cancellation does not apply to this case, and thus, this issue does not merit relief.

**Permissibility of the Joinder of the Two Cases for Trial**

The defendant argues that the trial court impermissibly joined the two indictments charging him with the rapes of A.T. and T.T. He argues that the trial court applied the incorrect legal standard when determining if consolidation was proper. We first note that this Court applies an abuse of discretion standard when reviewing a trial court's grant of permissive joinder or severance of multiple offenses. As articulated by our supreme court in Spicer v. State, 12 S.W.3d 438, 442-43 (Tenn. 2000), this Court

> review[s] decisions concerning permissive joinder and severance of offenses pursuant to Rules of Criminal Procedure 8(b) and 14(b)(1) for an abuse of discretion. State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999). As such, a trial court's decision to consolidate or sever offenses will not be reversed unless the "'court applied an incorrect legal standard, reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" Id. (quoting State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997)).

Although in the instant case the trial court did not explicitly state its findings on the record, it appears that the trial court considered the state's motion for consolidation under Tennessee Rule of Criminal Procedure 8(b), which requires the trial court to determine if the cases are of the "same or similar character" before ruling that consolidation is proper. However, Spicer, provides that if the defendant objects to consolidation the trial court should apply a different standard, Tennessee Rule of Criminal Procedure 14(b)(1). Id. at 443. Our supreme court has held that

> although [Tennessee] Rule [of Criminal Procedure] 8(b) permits consolidation when the offenses are parts of a common scheme or plan, Rule 14(b)(1) can be used to sever those offenses if evidence of each offense is not admissible in the trial of the others. . . . [T]he Rules [of Criminal Procedure] allow a trial court to consolidate offenses over the defendant's objection only when the offenses are parts of a common scheme or plan and evidence of each offense is admissible in the trial of the others. Consequently, when a defendant objects to a pre-trial consolidation motion by the state, the trial court must consider the motion by the severance provisions of Rule 14(b)(1), not the "same or similar character" standard of Rule 8(b).

Id. In essence, "a defendant has an absolute right to sever offenses that are merely of the 'same or similar character.'" Id. at 446. The court has articulated a test for trial courts to follow when determining whether consolidation is proper over a defendant's objection.

> Before consolidation is proper, the trial court must conclude from the evidence and arguments presented at the hearing that: (1) the multiple offenses constitute parts of

a common scheme or plan, Tenn. R. Crim. P. 14(b)(1); (2) evidence of each offense is relevant to some material issue in the trial of all the other offenses, Tenn. R. Evid. 404(b)(2); [State v.]Moore, 6 S.W.3d[235,] 239 [Tenn. 1999)]; and (3) the probative value of the evidence of the other offenses is not outweighed by the prejudicial effect that admission of the evidence would have on the defendant, Tenn. R. Evid. 404(b)(3).

Id. at 445. Because the defendant objected to the state's motion for consolidation, the trial court should have shifted its analysis of the propriety of the consolidation from a Rule 8(b) analysis to a Rule 14(b) analysis and the tripartite test articulated above. However, the trial court did not do this and thus applied an incorrect legal standard.

Although the trial court applied an incorrect standard, this Court will only grant a new trial if the trial court's error "affirmatively appears to have affected the outcome of the trial." Id. at 447 (citing Tenn. R. App. P. 52(a), 36(b)). The factual scenario presented in Spicer is similar to that presented by the case sub judice. In Spicer, in which the defendant was on trial for the sexual molestation of his two step-daughters, our supreme court held that consolidation of the offenses involving both children was improper.

> [W]e conclude that the verdict in this case probably resulted in part from unfair prejudice ensuing from improper consolidation of the two indictments. . . . It is unlikely that the jury was not influenced by the perceived propensity of the appellant to sexually abuse his step-daughters, or that the testimony from each of the victims was not bolstered by the same type of testimony coming from the other. This perceived propensity combined with less than abundant evidence of rape leads us to conclude that the consolidation error affirmatively affected the outcome of the trial. Therefore, a new trial on this indictment is needed to ensure that the appellant's conviction is not the result of unfair prejudice.

Id. at 448. The court also noted that while consolidation of such cases is not inherently prejudicial, "[i]n most cases, a real probability exists that the jury could be overwhelmed by the sheer volume of prejudicial evidence and that the jury could be tempted to convict based upon a defendant's propensity to commit crimes rather than convict solely upon evidence relating to the charged offense." Id.

Here, like Spicer, the proof against the defendant consisted of the victim's testimony and some inconclusive medical expert testimony.[3] As we determined earlier, the convicting proof is

---

[3] In the instant case, the medical expert testified that A.T.'s physical exam showed no conclusive signs of sexual abuse. However, the expert further testified that such a lack of conclusive physical evidence of abuse was common and that the lack of evidence did not mean that the charged abuse did not occur, especially in light of the types of alleged acts, fellatio and partial penile-anal penetration. In Spicer, the medical expert testified that one victim's physical test results were consistent with repeated penile-vagile sexual penetration. Spicer, 12 S.W.3d at 441-42. However, this expert testified that while the victim's condition was consistent with sexual penetration, penetration was not the only possible cause of the victim's condition and that her condition could have been the result of a number of
(continued...)

sufficient to support the defendant's convictions, although it is not overwhelming. Thus, it is probable that the jury was affected by T.T.'s testimony and the resulting apparent propensity for the defendant to commit such illegal acts. See id. In Spicer, the court stated that "[t]his perceived propensity combined with less than abundant evidence of rape leads us to conclude that the consolidation error affirmatively affected the outcome of the trial." Id. In view of the prosecutor's repeated reference to the facts of the charges involving T.T., we doubt that the trial court's limiting instruction, which instructed the jury to disregard all evidence related to T.T.'s case, was sufficient to counteract the propensity for unfair prejudice resulting from the admission of that evidence. Accordingly, we remand this case for a new trial on the charges involving the molestation of A.T. in order "to ensure that the appellant's conviction is not the result of unfair prejudice." Id.

### Propriety of the Prosecutor's Closing Argument

The defendant argues that the trial court erroneously failed to grant a mistrial after the prosecutor referred to the victim T.T. in his rebuttal closing argument. The prosecutor made references to the victim T.T. despite the fact that the trial court had granted a mistrial for T.T.'s case and despite the fact that the trial court had instructed the jury to disregard all evidence relating to T.T.'s case. Because we have determined that the defendant is entitled to a new trial based upon the improper consolidation of A.T.'s and T.T.'s cases, we will only briefly address this issue.

In his rebuttal closing argument, the prosecutor referred to T.T. and the facts of her case several times until he was interrupted by an objection from defense counsel.[4] The trial court sustained defense counsel's objection. However, the prosecutor went on to refer to T.T. several more times. The trial court then interrupted the prosecutor and specifically instructed him not to mention T.T. The court further reminded the jury that it was not to consider the facts of T.T.'s case during their deliberations and instructed them to disregard all references to T.T. The prosecutor

---

[3](...continued)
causes. Id. at 448.

[4] Arguably, the prosecutor referred to T.T.'s case in his rebuttal argument because the defense counsel subtly referred to T.T. in its closing argument. Defense counsel made several references to the fact that A.T. was not the first to report an allegation of sexual abuse by the defendant.

subsequently refrained from specifically referring to T.T.'s case, but he did make further references to the fact that the defendant is someone who rapes "children."[5]

As noted earlier, we believe that there is a strong likelihood, per <u>Spicer</u>, that the introduction of evidence regarding T.T.'s case and the prosecution's reference to it in closing argument was prejudicial to the defendant because it could have influenced jurors to convict the defendant for the rape of A.T. based upon his propensity to commit such acts. Therefore, we need not address whether this reference to T.T.'s case, standing in isolation, affected the verdict to the prejudice of the defendant.

## **Conclusion**

For the foregoing reasons, we find that the lower court improperly consolidated the defendant's indictments for trial. Accordingly, the judgment of the lower court is REVERSED AND the case REMANDED for a new trial.



JERRY L. SMITH, JUDGE

---

[5] The defendant argues that because he objected to the prosecutor's references to T.T. but did not make a contemporaneous motion for mistrial, he has waived the issue on appeal. However, he asserts that this Court should find the trial court's failure to declare a mistrial <u>sua sponte</u> was plain error. The state responds that the defendant made a tactical decision not to move for a mistrial based upon the belief that the trial court's granting of a mistrial of T.T.'s case would influence the jury to find that A.T.'s case lacked merit, as well, and that such errors resulting from tactical decisions should not receive plain error relief.

We first note that the case that the defendant cites for the proposition that he waived this issue on appeal by failing to make a contemporaneous motion for mistrial, <u>State v. Robinson</u>, 971 S.W.2d 30, 44 (Tenn. Crim. App. 1997), does not mandate that a complaining party make a contemporaneous motion for mistrial in order to preserve the issue for appeal. Instead, <u>Robinson</u> states that in order to preserve an issue for appeal, a party must make a contemporaneous objection to the objectionable behavior. The <u>Robinson</u> court further noted that while neither party in that case made a contemporaneous objection, "[i]n addition, neither party made a motion for mistrial." <u>Id.</u> The <u>Robinson</u> court did not state that the complaining party had an affirmative duty to move for a mistrial, but that the complaining party had failed to make its obligatory contemporaneous objection. The court also noted that in addition to failing to make its obligatory objection, the complaining party also did not make a motion for mistrial or take any other permissible action that may have helped the court determine that the complaining party had not waived the issue for appeal by its inaction. <u>See also</u> <u>State v. Dellinger</u>, No. E1997-00196-SC-DDT-DD, 2002 Tenn. LEXIS 207, at *102 (Tenn. May 7, 2002) (stating that a defendant must make a contemporaneous objection to the objectionable statement in the prosecutor's closing argument in order to preserve the issue for appeal, but making no mention of a mandatory duty to make a contemporaneous motion for mistrial). Accordingly, because the defendant did make a contemporaneous objection to the prosecutor's comments, which in turn caused the trial court to instruct the prosecutor not to make any similar comments and to give the jury a limiting instruction, we find that the defendant properly preserved this issue for appeal, and thus the issue is not subject to a plain error analysis.