IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
August 5, 2003 Session

**STATE OF TENNESSEE v. GENE BOOKER**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 00-13829, 00-13830, 00-13831     Chris Craft, Judge**

_____

**No. W2002-02327-CCA-R3-CD  - Filed February 10, 2004**

_____

The appellant, Gene Booker, was convicted by a jury in the Shelby County Criminal Court of aggravated robbery, especially aggravated kidnapping, and being a convicted felon in possession of a handgun.  Following a sentencing hearing, the trial court sentenced the appellant to an effective sentence of fifty-one years in the Tennessee Department of Correction.  On appeal, the appellant contends that 1) the evidence was insufficient to sustain his convictions and 2) the trial court erred in determining that the offense of being a felon in possession of a handgun should be tried with the other offenses.  Upon review of the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Edwin C. Lenow, Memphis, Tennessee, for the appellant, Gene Booker.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Betsy Carnesale, Assistant District Attorney General, for the appellant, State of Tennessee.

**OPINION**
**I.  Factual Background**

Around 8:00 p.m. on March 10, 2000, the victim, Marcus Rice, drove to the South Memphis Grocery Store, a small neighborhood grocery on Mallory Street in Memphis.  Upon entering the store, the victim stopped at the front counter to talk with Shell, the store's cashier.  While talking to Shell, the victim observed the appellant and Fredrick Rice, the victim's "little brother," at the rear of the store.  The appellant motioned for the victim to join them.  When the victim joined the two men, the appellant revealed a gun hidden under his coat and told the victim, "Chicken ain't here now."  At trial, the victim testified that he believed the gun to be a black nine-millimeter pistol.

The victim attempted to leave, but as he reached the front of the store, an individual named Deangelo stepped in front of the door and prevented him from leaving. The appellant then placed his hand on the pistol and told the victim to return to the rear of the store. Because he was afraid that the appellant might shoot him, the victim complied. When the victim reached the rear of the store, he observed Fredrick sitting on a crate and Ricky Ward, a store employee, "behind the meat box . . . cleaning the meat off."[1]

The appellant took out his pistol, pointed it at the victim, and ordered the victim to empty his pockets. Terrified, the victim complied, placing his money, change, wallet, and beeper on a nearby shelf. The appellant took approximately two hundred fifty dollars and three silver earrings from the victim and returned the victim's wallet, keys, and beeper. The appellant then put the pistol under the victim's chin and searched the victim. After completing his search, the appellant told the victim to remove his shoes and sit on a box with his hands underneath him. The appellant forced the victim to remain in this position for approximately thirty minutes.

Thereafter, the appellant said, "Let's go around to your house." The victim put on his shoes and left the store, followed closely by the appellant. As they exited the store, they passed Deangelo, Shell, and another customer at the front counter. The appellant hid the pistol under his coat so that it could not be seen. The appellant and the victim then got into the victim's vehicle, and the victim drove to his house which was located nearby. The appellant sat in the front passenger seat with the pistol laying across his lap, pointed at the victim.

When they arrived at the victim's house, the appellant ordered the victim out of the vehicle and warned him not to run. The appellant pointed the pistol at the victim, and they walked to the house. Upon entering the house, the appellant asked the victim if he had any money in the house. The victim responded that he did not. The appellant then asked about a gun that the victim had in his possession the previous month, but the victim informed the appellant that he no longer had the gun. When the appellant began searching the kitchen cabinets, the victim considered attempting an escape, but decided against it because the kitchen door was "half shut."

Thereafter, the appellant ordered the victim into a bedroom. In the bedroom, the appellant picked up a Sony PlayStation, saying, "I'm going to take this with me." The appellant again asked the victim if he had a gun. The victim repeated that he did not have a gun, but the appellant did not believe him. The appellant ordered the victim back into the kitchen and forced the victim "to put [his] head in [a kitchen] chair." The appellant then placed the pistol to the back of the victim's head and told him, "You just playing me . . . where [is] the gun?" The victim repeated that he did not have a gun; however, because he was afraid that the appellant would shoot him, he quickly retracted the statement, telling the appellant, "I got it, it's up the street at my mamma's house." The victim's mother lived on the same street as the victim. The appellant replied, "let's go up there."

---

[1] Because the victim and two witnesses share the last name "Rice," we have elected to utilize first names for the purpose of brevity. We intend no disrespect to these individuals.

At trial, the victim explained that there was no gun at his mother's house, but he was hopeful that he and the appellant would encounter neighbors along the way. However, no one was outside that evening. The appellant walked behind the victim, holding his gun at his waist. As they approached his mother's house, the victim observed his mother's vehicle parked on the street in front of the house. The victim told the appellant that the gun was in the vehicle and that he would go into the house to get the keys. The appellant informed the victim, "[Y]ou ain't got to worry about no keys, I've got a key." Holding the gun in his right hand, the appellant "kick[ed] in" the front passenger window with his left foot.

After the appellant broke the window, the victim sat down on the walkway in front of his mother's house. Immediately, he observed that the front door of his mother's house was open. The appellant also noticed the open door and ordered the victim to stand up. The appellant then hid behind a tree and told the victim, "Ain't nobody going to see who shot you." According to the victim,

> I just stood there and [the appellant] kept looking back and forth down at the other end and when he looked the third time, I broke and ran. When I ran, I ran into the yard next to my mamma's house and I heard the gun click.
>
> . . . .
>
> . . . I tripped up in the yard and fell, got up and ran and I ran across each one of them houses, jumped over two fences, got to the last house and went down a wall and jumped down and ran around to the alley and ran back up towards my mamma's house.

The victim crawled under his mother's house and hid for fifteen to twenty minutes. While hiding, the victim heard the appellant yelling at someone in the parking lot of the grocery store. By the time the victim came out of hiding, his sister and his daughter had come outside. The victim told his sister to call the police and then went across the street to a friend's house to await their arrival. The police arrived within thirty minutes. The victim informed the police of the events and the officers left. Because the appellant was not arrested that evening, the victim collected some belongings from his house and went to stay with his aunt in Orange Mound.

The next day, the victim went to the Shelby County Criminal Justice Center and filed a report with the officers in the robbery/homicide division. He also identified the appellant in a photographic lineup. On the photographic lineup, the victim wrote, "He put a gun on me [and] force[d] me to my home [threatening] to shoot me and robbed me of $240."

At trial, the victim testified that the appellant's nickname was "Pee-Wee" and he lived in the same neighborhood as the victim. The victim stated that he had never had any problems with the appellant, but they were not friends. The victim testified that Melvin Webb, also known as

"Chicken," was a mutual friend of the victim and the appellant. Prior to the instant offense, Webb had asked the victim to "sign a bond" for the appellant, and the victim had agreed. However, the victim maintained that he did not pay on the bond and, thus, the appellant did not owe him any money. The victim testified that prior to trial, Webb asked him to talk to the appellant's attorney and tell him "all of this . . . was a mistake." The victim refused.

On cross-examination, the victim acknowledged that he had known the appellant and Webb for thirteen years prior to the offense. The victim denied telling Webb that the instant allegations were false. However, the victim conceded that in his statement to Sergeant Polk, he did not allege that the appellant had stolen the Sony PlayStation. He also failed to inform Officer Polk that Shell had been present at the grocery store the evening of the offenses, or that the appellant had placed the pistol under his chin.

At trial, Fredrick Rice, the victim's brother, testified that on the evening of March 10, 2000, he went to the South Memphis Grocery Store to play video games. Around 6:00 p.m., he observed the appellant enter the store. Approximately forty-five minutes later, the victim arrived at the store. Fredrick went to the back of the store where he sat on a crate and visited with another customer. Shortly thereafter, Fredrick looked up to see the victim running toward the door. However, Deangelo Taylor stepped in front of the door and prevented the victim from leaving. Fredrick testified that the victim and the appellant were standing "face to face" and the victim asked the appellant, "[W]hat's going on[?]" The appellant responded, "You know what time it is." The appellant then pointed a gun at the victim, and the two men walked out of the store. By the time Fredrick ran outside, they were gone.

Fredrick was unable to recall whether the appellant had taken anything from the victim. He further related that he did not call the police because "I was going to take care of it my own way." On cross-examination, Fredrick admitted that although he subsequently provided a statement to the assistant district attorney general, he never spoke to police about the incident.

Shiquita Rice, the victim's sister, testified at trial that she lived with her mother on West Gage Street. Shiquita related that around 8:30 p.m. on the night of the instant offenses, she received a telephone call from her sister-in-law and, as a result of that telephone call, she ran out the front door into the middle of the street. When Shiquita turned to go back into the house, she observed the victim coming from behind the house. She testified that the victim "jumped on the porch and . . . ran in the house." Shiquita followed the victim, who was acting "real nervous" and was "shaking and scared." The victim asked her to call the police, explaining that Pee-Wee had attempted to kill him. Shiquita complied and the police arrived shortly thereafter. On cross-examination, Shiquita conceded that the victim did not call the appellant by name, using only his nickname. However, Shiquita testified that the appellant was the only person she knew who was nicknamed "Pee-Wee."

Memphis Police Lieutenant Anthony F. Craig testified that in June 2000, he worked in the robbery division of the Memphis Police Department. That same month, he assisted Sergeant Polk in interviewing the appellant shortly after the appellant's arrest. Lieutenant Craig testified that after

-4-

the appellant was advised of his rights, the appellant told the officers that his confrontation with the victim on March 10, 2000, "resulted from a situation that he had with [the victim] in which he was supposed to have been placed on a bond . . . ." When asked where he had been since the "confrontation," the appellant responded that he had been staying in various hotels in an effort to elude the police. On cross-examination, Lieutenant Craig conceded that he did not have a copy of the appellant's statement, but was recalling the interview from memory. Lieutenant Craig also acknowledged that since interviewing the appellant, he had interviewed more than five hundred people. Lieutenant Craig recalled that the appellant said he did not have a gun during his confrontation with the victim.

Rachael Bowen, a fingerprint technician in the Records and Identification Division of the Shelby County Sheriff's Department (R & I), testified that R & I is "where records are maintained on individuals who are arrested." Upon arrest, an individual's fingerprints are taken and those prints are entered into the "automated system" to determine whether the individual has previously been arrested. Bowen testified that at the State's request, she took a print of the appellant's right thumb and compared it to the print in R & I file number 102856. The fingerprints were a match. Kimberly Lenahan, a deputy clerk for the Shelby County Criminal Court Clerk's Office, testified that the appellant had previously been arrested and convicted of four counts of aggravated assault. The R & I number for each conviction was 102856.

As its first witness, the defense called Wanetta Michelle Thornton. Thornton, also known as "Shell," worked as a cashier at the South Memphis Grocery Store. Thornton testified that she was working at the store on March 10, 2000, and observed the victim and the appellant enter the store. Although she recalled that Fredrick was at the store when she arrived for work, she was unable to recall whether he was there at the same time as the victim and the appellant. Thornton testified that she did not observe the appellant point a gun at the victim or take his money. She did not see Deangelo in the store that evening. Thornton stated that the victim and the appellant left the store together.

Ricky Ward was also employed at the South Memphis Grocery Store. Ward testified at trial that on the evening of March 10, 2000, both the victim and the appellant were at the store. Ward estimated that they were in the store approximately fifteen to twenty minutes before leaving together. Ward did not observe the appellant with a gun, but conceded that he was unable to fully see the victim and the appellant from the "meat box." Ward testified that he did not see Deangelo in the store that evening.

Melvin "Chicken" Webb testified that he lived on East Gage Street and grew up with the victim and the appellant. Webb related that he and the victim had signed the appellant's bond following a previous arrest, with each paying five hundred dollars. According to Webb, the appellant had not repaid the loans. Webb testified that he spoke with the victim a month prior to trial, and the victim told him that he wanted to drop the charges. Webb suggested that they call the appellant's attorney, but they were unable to reach him.

Based on the foregoing testimony, the jury convicted the appellant of two counts of aggravated robbery, one count of especially aggravated kidnapping, and four counts of being a convicted felon in possession of a handgun. Prior to sentencing, the trial court merged the two counts of aggravated robbery into one count and the four counts of being a convicted felon in possession of a handgun into one count. Following a sentencing hearing, the trial court sentenced the appellant to an effective sentence of fifty-one years incarceration. On appeal, the appellant contends that 1) the evidence was insufficient to sustain his convictions and 2) "the trial court erroneously allowed the joinder of the offense of a Convicted Felon in Possession of a Handgun during the trial under Rule 404(b) of the Tennessee Rules of Evidence."

## II. Analysis

### A. Sufficiency of the Evidence

The appellant alleges that the evidence was insufficient to support his convictions. When an appellant challenges the sufficiency of the convicting evidence, the standard for review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e). Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the jury as trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Should the reviewing court find particular conflicts in the trial testimony, the court must resolve the conflicts in favor of the jury verdict. Tuggle, 639 S.W.2d at 914. This court will not reweigh or reevaluate the evidence. Bland, 958 S.W.2d at 659.

Aggravated robbery is defined as robbery accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon. Tenn. Code Ann. § 39-13-402(a)(1) (1997). Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (1997). Especially aggravated kidnapping is committed when, by use of a deadly weapon, an accused knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty. Tenn. Code Ann. §§ 39-13-302(a), -305(a)(1) (1997). Finally, a person commits the offense of being a convicted felon in possession of a handgun if that person "possesses a handgun and . . . [h]as been convicted of a felony involving the use or attempted use of force, violence or a deadly weapon." Tenn. Code Ann. § 39-17-1307(b)(1)(A) (1997).

The evidence at trial showed that on the evening of March 10, 2000, at the South Memphis Grocery Store, the appellant pointed a gun at the victim and refused to allow him to leave. The appellant forced the victim to the rear of the store and ordered him to empty his pockets. The appellant stole approximately two hundred fifty dollars and three silver earrings from the victim. After detaining the victim at the rear of the store for approximately thirty minutes, the appellant forced the victim at gunpoint to leave the store, get into his vehicle, and drive to his house.

At the victim's house, the appellant stole the victim's Sony PlayStation and asked the victim if he had money or a gun in the house. The victim responded that he had neither money nor a gun; however, the appellant did not believe him. After the appellant threatened to shoot him, the victim told the appellant that the gun was at his mother's house. The two men walked to the victim's mother's house where the victim managed to escape. At the time of the instant offenses, the appellant had four prior convictions for aggravated assault.

The appellant argues that because there were conflicts in the testimonies of the witnesses at trial, the evidence was insufficient to support his convictions. However, as we previously noted, conflicts in the trial testimony must be resolved in favor of the jury verdict. Tuggle, 639 S.W.2d at 914. This court will not reweigh or reevaluate the evidence. Bland, 958 S.W.2d at 659. Taken in the light most favorable to the State, we conclude that the evidence was sufficient to support the appellant's convictions for aggravated robbery, especially aggravated kidnapping, and being a convicted felon in possession of a handgun. This issue is without merit.

## B. Convicted Felon in Possession of a Handgun

During the trial, the State advised the trial court that it would seek to introduce attested copies of judgments reflecting the appellant's four prior convictions for aggravated assault. Defense counsel objected, arguing that the introduction of the prior convictions would prejudice the appellant. Over defense counsel's objection, the trial court agreed to allow the introduction of the fact of conviction, but refused to allow into evidence the details surrounding the offenses. In so ruling, the trial court noted that the State was required to prove as an element of the offense of being a convicted felon in possession of a handgun that the appellant had prior felony convictions. Moreover, the trial court found that joinder of the offenses was mandatory because the offenses were part of the same criminal episode. The trial court explained,

> I think that they're a mandatory joiner [sic], if the [S]tate tried the other two cases, then they could not try this case separately and this is the way the grand jury indicted this case. [The State] indicted all three of them and they are consolidated for trial. They all happened at the same time.

Nevertheless, the trial court advised the parties that a limiting instruction would be given informing the jurors that the prior convictions were to be considered only for the purpose of proving an element

of the offense of being a convicted felon in possession of a handgun or determining the credibility of the appellant should he choose to testify.

On appeal, the appellant argues that "the trial court erroneously allowed the joinder of the offense of a convicted felon in possession of a handgun during the trial [in violation of] Rule 404(b) of the Tennessee Rules of Evidence." Specifically, the appellant asserts that the introduction of the appellant's prior convictions prejudiced the appellant by "persuading" the jury to convict him of aggravated robbery and especially aggravated kidnapping. The State contends that because the offenses arose from the same criminal episode, joinder was mandatory under Rule 8(a) of the Tennessee Rules of Criminal Procedure. The State further contends that by not filing a motion to sever prior to trial, the appellant waived the issue on appeal.

Pursuant to Rule 8(a) of the Tennessee Rules of Criminal Procedure,

> Two or more offenses shall be joined in the same indictment, presentment, or information, . . . or consolidated pursuant to Rule 13 if the offenses are based upon the same conduct or arise from the same criminal episode and if such offenses are known to the appropriate prosecuting official at the time of the return of the indictment(s), presentment(s), or information(s) and if they are within the jurisdiction of a single court.

The Advisory Commission Comments to Rule 8 further provides, in pertinent part,

> This rule is designed to encourage the disposition in a single trial of multiple offenses arising from the same conduct and from the same criminal episode, and should therefore promote efficiency and economy. Where such joinder of offenses might give rise to an injustice, Rule 14(b)(2) allows the trial court to relax the rule.

Tenn. R. Crim. P. 8, Advisory Commission Comments; see also State v. Carruthers, 35 S.W.3d 516, 573 (Tenn. 2000) (appendix).

Although Rule 8 of the Tennessee Rules of Criminal Procedure provides for mandatory joinder in these cases, the trial court retains discretion to grant a severance of the offenses under certain circumstances. State v. Shirley, 6 S.W.3d 243, 246 n.3 (Tenn. 1999); Tenn. R. Crim. P. 14(b)(2).[2] However, "[u]nless the defendant moves to sever the offenses prior to trial or at an

---

[2] Rule 14(b)(2) provides,

> If two or more offenses have been joined or consolidated for trial pursuant to Rule 8(a), the court shall grant a severance of offenses in any of the following conditions:

(continued...)

otherwise appropriate time, the defendant waives the right to seek separate trials of multiple offenses." Spicer v. State, 12 S.W.3d 438, 443 (Tenn. 2000) (citing Tennessee Rules of Criminal Procedure 12(b)(5) and 14(a)).

On appeal, the appellant simply states his argument without reference to any pretrial motions or findings by the trial court regarding this issue.[3] The appellant also failed to specifically raise the severance issue in his motion for new trial, arguing that "the trial court erred in not granting the [appellant's] Motion in Limine." However, neither the motion in limine nor the transcript of the hearing on the motion for new trial are included in the record on appeal. The record includes no written motion to sever offenses and no transcript of a hearing on a motion to sever offenses.

Under Tennessee law, the appellant bears the burden of preparing an adequate record for appellate review. State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993). "Where the record is incomplete and does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which the party relies, an appellate court is precluded from considering the issue." Ballard, 855 S.W.2d at 560-61; Tenn. R. App. P. 24(b). In the instant case, the absence of an adequate record prevents appellate review of this issue. Accordingly, we must affirm the trial court's ruling.

---

[2](...continued)

> (i) If before trial on motion of the [S]tate or the defendant it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense.
>
> (ii) If during trial with consent of the defendant it is deemed necessary to achieve a fair determination of the defendant's guilt or innocence of each offense. . . .
>
> (iii) If the [c]ourt finds merit in both a motion by the district attorney general for a continuance based upon exigent circumstances that temporarily prevent the [S]tate from being ready for trial of the joined prosecutions and an objection by the defendant to the continuance based on a demand for speedy trial.

Tenn. R. Crim. P. 14(b)(2).

[3] In his appellate brief, the appellant restates the issue and summarily argues:

> Whereupon the State introducing the [appellant's] four prior aggravated assault convictions was this not over persuading the jury to convict on the Aggravated Robbery and Especially Aggravated Kidnapping? Your Appellant submits that it did and that it was reversible error on the part of the Trial Judge. There were several alternative ways of trying the appellant on the Convicted Felon in Possession of a Handgun, but the Court elected not to pursue any of these.

## III.  Conclusion

For the foregoing reasons, we affirm the judgments of the trial court.


_____
NORMA McGEE OGLE, JUDGE