IN THE SUPREME COURT OF TENNESSEE

AT KNOXVILLE

<table>
<tr><td>STATE OF TENNESSEE,<br>**PUBLICATION**</td><td>)</td><td>**FOR**</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Appellee,<br><u>**NOVEMBER 1, 1999**</u></td><td>)</td><td>**FILED:**</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>BRADLEY CRIMINAL</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>DONALD RAY SHIRLEY,</td><td>)</td><td>HON. MAYO L. MASHBURN,<br>JUDGE</td></tr>
<tr><td>Appellant.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>No. 03S01-9902-CR-00014</td></tr>
</table>



**FILED**

November 1, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

For the Appellant:
William J. Brown
Nashville, Tennessee

For the Appellee:
Paul G. Summers
Attorney General & Reporter

Michael E. Moore
Solicitor General

Elizabeth T. Ryan
Assistant Attorney General
Nashville, Tennessee

**OPINION**

AFFIRMED IN PART,
REVERSED IN PART, AND
REMANDED

BARKER, J.

In this case we consider the proper standard of appellate review of a trial court's denial of a motion to sever offenses under Tennessee Rule of Criminal Procedure 14(b)(1). For the reasons set forth below, we hold that a denial of a severance will only be reversed for an abuse of discretion. We also hold that the trial

court in this case abused its discretion in denying a severance because the methods used to commit the offenses were not so materially distinct or unique as to rise to an inference of identity. Because we find that this abuse of discretion was not harmless, the decision of the Court of Criminal Appeals is reversed, and this case is remanded to the trial court for new trials.

## BACKGROUND

On January 17, 1996, a Bradley County grand jury returned an indictment charging the appellant, Donald Ray Shirley, with four counts of armed robbery.[1] Shortly thereafter, the appellant moved to have the offenses severed and tried separately pursuant to Rule of Criminal Procedure 14(b)(1). During the hearing on the motion to sever, the State argued that the offenses were parts of a common scheme or plan because the similarities of the offenses revealed that a distinctive design was employed. In response, the appellant argued that although the offenses were similar, the differences in the offenses were such that no inference of identity could be made. After taking the matter under consideration, the trial court denied the appellant's motion without stating any of its findings of fact or conclusions of law on the record.

Following a two-day trial, a jury found the appellant guilty of three of the four counts of armed robbery. He was sentenced to serve concurrent sentences of twelve years for each of the three offenses and was fined a total of sixty-thousand dollars. On appeal, the Court of Criminal Appeals affirmed the appellant's convictions and sentences, and in addressing the standard of appellate review, the intermediate court held that a denial of a severance was to be reviewed for an abuse of discretion. That court also held that the trial court acted within its discretion in denying the motion to sever because the evidence presented at trial demonstrated that the offenses were parts of a common scheme or plan.

---

[1] The first count alleged that the appellant robbed a convenience store on November 29, 1995, at 8:00 p.m. The second count alleged that ten days later on December 9, 1995, the appellant robbed a video rental store at 7:10 p.m. Counts three and four of the indictment alleged robberies of two convenience stores on December 10, 1995, occurring at 4:00 p.m. and 4:30 p.m. respectively.

We agree that a trial court's denial of severance should be reviewed for an abuse of discretion. However, we hold that the trial court applied an incorrect legal standard and therefore abused its discretion in finding that the offenses were parts of a common scheme or plan.

## STANDARD OF APPELLATE REVIEW

The proper standard by which to review a denial of a motion to sever offenses under the Rules of Criminal Procedure is an issue of first impression for this Court. Prior to the adoption of the Rules, this Court followed the principle that the "matter of consolidating separate indictments for trial is procedural[,] and generally this is a matter within the discretion of the trial court." See Bruce v. State, 213 Tenn. 666, 667, 378 S.W.2d 758, 759 (1964). The discretion of the trial courts to consolidate several offenses in a single trial was very broad, and although such discretion was not absolute, this Court usually only required that the consolidated offenses contain some "connecting link." Id. at 669, 378 S.W.2d at 759; see also Jett v. State, 556 S.W.2d 236, 237-38 (Tenn. Crim. App. 1977).[2]  In rare cases, this Court would reverse a conviction for improper consolidation of offenses, but such a reversal was usually limited to circumstances in which the offenses were either wholly unrelated or the evidence establishing one offense was "entirely different from the evidence . . . [establishing] the other offense charged." See Bullard v. State, 208 Tenn. 641, 645, 348 S.W.2d 303, 305 (1961).

Since the effective date of the Rules of Criminal Procedure on July 13, 1978, however, the discretion of the trial courts to consolidate or sever offenses has been

---

[2] The Jett court quoted from our decision in Bruce and listed the circumstances under which consolidation of offenses was generally proper:
> (1) where the offenses charged are similar, related, or connected, or (2) are of the same or similar character or class or (3) involve or arose out of the same or related or connected acts, occurrences, transactions, series of events, or chain of circumstances, or (4) are based on acts or transactions constituting part of a common scheme or plan or (5) are of the same pattern and committed in the same manner, or (6) where there is a common element of substantial importance in their commission, or (7) where the same, or much the same, evidence will be competent and admissible or required in their prosecution, and if not joined for trial the repetition or reproduction of substantially the same testimony will be required on each trial.

See 378 S.W.2d at 759-60. In each of these circumstances, "there is some connecting link between the indictments to be consolidated." Bruce, 213 Tenn. at 669, 378 S.W.2d at 759.

more strictly governed. For example, consolidation of multiple offenses in a single trial is now mandatory—and therefore outside the discretion of the trial court—when the offenses "are based upon the same conduct or arise from the same criminal episode . . . ." See Tenn. R. Crim. P. 8(a), 13(a).[3] The Rules have also significantly limited the court's discretion to consolidate offenses that "are of the same or similar character," since in such case a defendant has an absolute right to a severance of these offenses under Rule 14(b)(1) when a severance is requested. Further, the Rules still contemplate that trial courts have no discretion to consolidate offenses that are wholly unrelated or without any similarity of conduct, at least when consolidation is over the defendant's objection.[4]

Because the Rules of Criminal Procedure have significantly limited the discretion of trial courts to consolidate and sever offenses, various panels of the Court of Criminal Appeals have debated whether this decision under Rule 14(b)(1) is still within the sound discretion of the trial courts. While some panels of the intermediate court have continued to hold that trial courts still enjoy discretion to order a severance of offenses,[5] other panels have stated that Rule 14(b)(1) seems to change that general rule when the offenses are permissively joined pursuant to Rule 8(b).[6] Therefore, a uniform standard of review has not been used or developed.[7]

---

[3] Although Rule 8(a) provides for mandatory joinder in these cases, the trial court still does retain discretion to grant a severance of the offenses under some circumstances. See Tenn. R. Crim. P. 14(b)(2). However, since the decision to grant a severance from a mandatory joinder is governed by specific criteria, the trial court's discretion is not as broad as it was prior to the adoption of the Rules of Criminal Procedure.

[4] Since no provision in the Rules allows for consolidation of wholly unrelated offenses that do not even share a similarity of conduct, it follows that the trial court has no discretion to order a consolidation of those offenses. Cf. Bruce, 213 Tenn. at 669, 378 S.W.2d at 759 (holding reversible error to consolidate wholly unrelated offenses, even prior to the Rules of Criminal Procedure).

[5] See, e.g., State v. Furlough, 797 S.W.2d 631, 642 (Tenn. Crim. App. 1990) ("It is within the trial court's discretion whether to grant a severance of offenses."); State v. Wiseman, 643 S.W.2d 354, 362 (Tenn. Crim. App. 1982) ("The issue of severance or joinder of offenses is also a matter which is addressed to the sound discretion of the trial judge.").

[6] See, e.g., State v. McKnight, 900 S.W.2d 36, 50 (Tenn. Crim. App. 1994) ("While severance is ordinarily a matter which rests within the sound discretion of the trial court, that general rule is not necessarily applicable to the severance of offenses."); State v. Edwards, 868 S.W.2d 682, 691 (Tenn. Crim. App. 1993) ("While severance is ordinarily a matter which rests within the sound discretion of the trial court, that general rule is not necessarily applicable in relation to the severance of offenses."); State v. Peacock, 638 S.W.2d 837, 839 (Tenn. Crim. App. 1982) ("Likewise, the matter of severance of offenses under Rule 14(b)(1) is not solely within the discretion of the trial court.").

[7] In at least one case, the intermediate court stated that severance issues may not be within the sound discretion of the trial court, but it nevertheless applied an abuse of discretion standard. See Edwards, 868 S.W.2d at 694 (concluding that "[i]n our view, the trial court acted within the boundaries of

4

To clarify the law in this area, we hold that decisions to consolidate or sever offenses pursuant to Rules 8(b) and 14(b)(1) are to be reviewed for an abuse of discretion. Reading Rules 8(b) and 14(b)(1) together, it is clear that the discretion of the trial courts to permissively join and sever offenses is significantly limited in most cases.[8] In one case, however, the Rules still allow the trial court wide discretion to join offenses for a single trial, i.e., when the offenses are parts of a common scheme or plan and when the offense sought to be severed would be admissible as evidence in the trial of the other offenses. Since the trial court retains discretion to consolidate offenses in that one circumstance, it is logical that the trial court's decision to consolidate these offenses—or to deny a severance—should only be reversed for an abuse of that discretion.

Discretion essentially "denotes the absence of a hard and fast rule." See Ballard v. Herzke, 924 S.W.2d 652, 661 (Tenn. 1996). The decision of a trial court to sever offenses pursuant to Rule 14(b)(1) is never predetermined and will necessarily turn on the facts of a particular case. Therefore, a trial court's refusal to sever offenses will be reversed only when the "court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." See State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997) (citing Ballard, 924 S.W.2d at 661).

## SEVERANCE

Although the trial court in this case held a hearing on the severance issue, the court did not make any findings of fact or conclusions of law on the record. Therefore, we have examined the transcript of the severance hearing in its totality to determine whether the trial court abused its discretion in denying the defendant's motion to sever the offenses. After closely examining all of the evidence before the court at the

its discretion in denying the motion to sever"). In other cases, the intermediate court has decided severance questions without reference to any standard of review. See, e.g., State v. Adams, 859 S.W.2d 359, 362 (Tenn. Crim. App. 1992).

[8] As stated previously, since a defendant has an absolute right to a severance of offenses that are merely of the same or similar character, see Tenn. R. Crim. P. 14(b)(1), the discretion of the trial court to consolidate these types of offenses is virtually eliminated.

hearing, we hold that the trial court abused its discretion in denying the motion to sever the offenses, and we remand this case to the trial court for new trials on each of the offenses.

The "primary inquiry into whether a severance should have been granted under Rule 14 is whether the evidence of one crime would be admissible in the trial of the other if the two counts of indictment had been severed." State v. Burchfield, 664 S.W.2d 284, 286 (Tenn. 1984). To ensure that a defendant receives a fair trial, Tennessee Rule of Evidence 404(b) excludes evidence of "other crimes, wrongs, or acts" committed by the defendant when offered only to show the defendant's propensity to commit those "crimes, wrongs, or acts." However, when offenses alleged to be parts of a common scheme or plan are otherwise relevant to a material issue at trial, then Rule 404 will not bar their admissibility into evidence. See Bunch v. State, 605 S.W.2d 227, 229 (Tenn. 1980).

The relevance of offenses alleged to be parts of a common scheme or plan depends upon the type of evidence offered. In Tennessee, there are three types of common scheme or plan evidence: (1) offenses that reveal a distinctive design or are so similar as to constitute "signature" crimes; (2) offenses that are part of a larger, continuing plan or conspiracy; and (3) offenses that are all part of the same criminal transaction. See generally Neil P. Cohen et al., Tennessee Law of Evidence § 404.11, at 180 (3d ed. 1995). In this case, the Court of Criminal Appeals found that the various robberies were committed with a distinctive design, and the State also agrees that this is the only category into which these offenses could fall.

The most common basis for offering evidence of a distinctive design is to establish the identity of a perpetrator. See State v. McCary, 922 S.W.2d 511, 514 (Tenn. 1996); State v. Parton, 694 S.W.2d 299, 303 (Tenn. 1985). In this case, the identity of the offender was the central issue at trial, and therefore, if a distinctive design could be shown, then evidence of offenses constituting a common scheme or plan would be relevant. However, before multiple offenses may be said to evince a distinctive design, the "modus operandi employed must be so unique and distinctive

6

as to be like a signature." State v. Carter, 714 S.W.2d 241, 245 (Tenn. 1986).[9]

Although the offenses need not be identical in every respect, Bunch v. State, 605 S.W.2d 227, 231 (Tenn. 1980), the methods used in committing the offenses must have "such unusual particularities that reasonable men can conclude that it would not likely be employed by different persons." See Harris v. State, 189 Tenn. 635, 644, 227 S.W.2d 8, 11 (Tenn. 1950). Only when the method used to commit the crimes is so unique as to be like a signature can the inference of identity properly arise.

The State has argued in this case that the similarities in the offenses are such that a distinctive design may be inferred. We agree that the offenses in this case do share a number of similarities. For example, all four robberies were committed by a person wearing a black ski mask with a black gun,[10] the robberies occurred within a relatively short period of time,[11] and in three of the robberies the offender requested that the cash register drawer be placed on the counter. However, a court must also look to the methods used to commit the crimes and not merely enumerate their similarities and differences. Even though offenses may be similar in many respects, they can not be classified as signature crimes if they lack a distinct modus operandi.

When the methods used to commit the robberies in this case are examined, none are so unique that they may be said to bear the stamp or imprimatur of the appellant. The use of a black ski mask, gloves, and gun to commit armed robbery is simply not so unusual that reasonable people would conclude that the same person committed all of the offenses. See Harris, 189 Tenn. at 644, 227 S.W.2d at 11. Similarly, the offender's request that the cash register drawer be placed on the counter

---

[9] See also Bunch, 605 S.W.2d at 230 (stating that before offenses may be said to constitute signature crimes, "the *modus operandi* of the other crime and of the crime on trial must be substantially identical *and must be so unique* that proof that the defendant committed the other offense fairly tends to establish that he also committed the offense with which he is charged.") (emphasis in original).

[10] Although the robberies were committed with a black pistol, there was no agreement on the kind of pistol used. In the November 29 robbery, the witness stated that she thought the gun was a bb gun, although she was not sure. In the December 9 robbery, one witness definitely thought the gun was a bb gun, but the witness of the first robbery on December 10 was emphatic that the gun was an automatic gun and not a bb gun. The witness of the last robbery merely described the gun as a "police gun."

[11] The first robbery was of a convenience store on November 29, 1995, at 8:00 p.m. The second robbery was of a video rental store ten days later on December 9 at 7:10 p.m. The last two robberies were also of convenience stores on December 10 at 4:00 p.m. and 4:30 p.m. respectively.

in three of the robberies does not show a distinctive design.[12] "Different persons could easily have employed the plan and method used in each robbery." Cf. State v. Bobo, 724 S.W.2d 760, 765 (Tenn. Crim. App. 1981).[13]

Likewise, there are many differences in the robberies which demonstrate that the offenses do not share a distinct or unique modus operandi. For example, the testimony at the severance hearing established that the robber wore a green army jacket in two of the robberies and that the offender wore a black shirt and gray sweatshirt in the other two robberies.[14] The offender was also described in three cases as wearing black gloves, but the various witnesses disagreed as to whether the gloves were cloth or leather.[15] Further, the method of escape was different in the robberies,[16] and in two of the robberies, the offender removed his ski mask before the robbery was completed.[17] Because of the differences in the commissions of the robberies, we are unable to say that a distinct or unique modus operandi was used.

---

[12] The Court of Criminal Appeals notes that in the one case where the offender did not request that the cash drawer be placed on the counter, the witness had already done so. However, we find it significant that before the witness of the second robbery on December 10 placed the cash drawer on the counter, the offender walked into the store to the counter, cocked his gun, and told the witness to open the register. The witness testified that the offender did not request that the drawer to be placed on the counter when he demanded that she open the register, although the offender had so requested in all of the other offenses. This witness placed the drawer on the counter of her own accord. It simply is not clear that the witness foiled the otherwise apparent modus operandi of the offender.

[13] Even the intermediate court conceded that "the individual similarities between the robberies are not particularly unique . . . ." State v. Shirley, No. 03C01-9610-CR-00369, slip op. at 22-23 (Tenn. Crim. App. May 27, 1998). Instead, the intermediate court believed that "when considered together, the circumstances of the offenses established a distinctive design with sufficient uniqueness of method to constitute a common scheme or plan." Id. at 23. Respectfully, we fail to see how crimes that do not have a unique method when examined individually somehow become more unique when viewed in the aggregate. The crimes were either committed using a unique method, or they were not.

[14] In the November 29 robbery, the witness stated that the offender was wearing a black shirt, and in the second December 10 robbery, the witness testified on cross-examination that the offender was wearing a gray sweatshirt.

[15] In addition, the witnesses to the December 9 robbery of the video rental store testified that the gloves were too big for the offender, but the witness of the second robbery on the next day testified that the gloves were not loose fitting.

[16] In the December 9 robbery, the offender escaped in a white Chevy Corsica or Chevy Baretta which was parked outside the store. In the other cases, the offender escaped on foot without any witnesses hearing or seeing a car.
    In addition, the offender in the December 9 robbery backed out of the store, watching his victims as he left. In all of the other offenses, the offender turned to exit the store.
    In the November 29 robbery, the offender forced his victim to lie on the floor while he left, but this did not occur in any of the other robberies.

[17] In the December 9 robbery, the offender took off his mask before he drove away which enabled one witness to identify him. In the second robbery on December 10, the offender removed his mask before he was even out of the store.

At the severance hearing, the State introduced evidence in an attempt to show that the appellant was the person who committed all of the robberies. Although only one witness was able to identify the appellant as the person who committed any of the robberies, all of the witnesses agreed that the appellant shared the same physical characteristics as the offender.[18] However, the trial court must look for a distinctive method used to commit the crimes and not simply for evidence tending to show that the defendant was the offender. By its very definition, a modus operandi is not revealed merely by evidence showing that the defendant committed the crimes sought to be joined.[19] See also Young v. State, 566 S.W.2d 895, 898 (Tenn. Crim. App. 1978) (stating that the "test is not whether there was evidence that a defendant committed both crimes, but whether there was a unique method used in committing the crimes"). As such, to the extent that the trial court relied on this evidence to find a distinctive design, it erred in doing so.

We hold that the trial court abused its discretion in refusing to sever the four armed robberies. The trial court seems to have allowed consolidation of the offenses based only upon the similarities in the offenses without regard to the presence of a distinct and unique modus operandi.[20] Therefore, by applying an incorrect legal standard, the trial court abused its discretion in refusing to sever these offenses.

**HARMLESS ERROR**

Having found that the trial court abused its discretion in refusing to sever the four armed robberies for trial, we must now determine whether that abuse of discretion is reversible error. Tennessee Rule of Criminal Procedure 52 states that no conviction is to be reversed on appeal "except for errors which affirmatively appear to have

---

[18] For example, all of the witnesses testified that the offender was a white male like the appellant, that the offender had the same hair color as the appellant, and that the offender was about the same height and weight as the appellant.

[19] The term "modus operandi" is defined as a "[m]ethod of operating or doing things (M.O.). Term used by police and criminal investigators to describe the *particular method* of a criminal's activity." Black's Law Dictionary 1004 (6th ed. 1990) (emphasis added).

[20] Because there are no findings of fact or conclusions of law from the trial court in the record, we cannot be absolutely certain of the trial court's basis for its decision.

affected the result of the trial on its merits." See also Tenn. R. App. P. 36(b). After reviewing the record as a whole, we are unable to conclude on the facts of this case that the error was harmless.

The "line between harmless and prejudicial error is in direct proportion to the degree of the margin by which the proof exceeds the standard required to convict, beyond a reasonable doubt." Delk v. State, 590 S.W.2d 435, 442 (Tenn. 1979). At trial, the State presented six witnesses who testified to substantially the same details on direct examination. Each witness testified that a person matching the defendant's height, weight, and hair color robbed their store wearing an army jacket and black ski mask. The jury found the appellant not guilty of the November 29 offense, but it convicted the appellant of the remaining counts.

Although the Court of Criminal Appeals held that the evidence was sufficient to sustain the appellant's conviction, the evidence against him was clearly not overwhelming. For example, most of the eye-witnesses could not positively identify the appellant as the offender,[21] and much of the trial testimony was inconsistent with statements given immediately after the robbery.[22] It is clear that the credibility of the

---

[21] The sole eye-witness to the second robbery on December 10 could not positively identify the appellant as the offender at trial, nor could she identify the appellant in the line-up.
     The sole eyewitness of the first December 10 robbery did identify the appellant at the trial. However, she could not positively identify the appellant as the offender earlier at a line-up, and she described herself as "real bad at noticing details." At the line-up, she identified two people as the possible offender.
     There were three witnesses to the December 9 robbery. One of the witness from the December 9 robbery admitted that she was hesitant about her identification of the appellant as the offender, but she testified that "her instincts" told her that the appellant "was the one." A second witness could not make an identification because it was too dark to see the offender. The third witness did make a positive identification of the appellant from a photographic line-up.
     Finally, the sole witness at the November 29 robbery did make a positive identification of the appellant as the offender although she was certain the offender had freckles around his eyes. It is uncontroverted that the appellant has no freckles on his face.

[22] The sole eye-witness to the second robbery on December 10 originally stated that the offender wore a gray sweatshirt. By the time of trial, her testimony changed to identify the offender as wearing a green jacket, due in large part to her paying more close attention to the offender in a dream. At the time of his arrest less than thirty minutes after this robbery, the appellant was arrested wearing a blue sweatshirt.
     The sole eye-witness to the first robbery on December 10 originally told the police investigator that the offender's hair was "straight, not curly." By the time of trial, her testimony had changed so that the offender's hair was "kind of wavy," a description which more accurately described the appellant's hair at that time. In addition, this witness identified the green jacket at trial, but within an hour of the robbery, she could not identify the color of the jacket.
     The sole-eyewitness to the November 29 robbery originally identified the offender as wearing a black shirt. By the time of trial, she changed her testimony to identify the offender as wearing a jacket, which was more consistent with other witnesses.
     In addition, all of the State's witnesses stated that the jacket or shirt worn by the offender was zipped or buttoned. However, the jacket the police found in the appellant's car could not be zipped or buttoned.

each witness was bolstered by the testimony of other witnesses concerning similar offenses. The failure to sever under these circumstances invited the jury to infer the appellant's guilt from a perceived propensity to commit armed robbery. Accordingly, we hold that the erroneous failure to sever the offenses affirmatively appears to have affected the verdicts of conviction and that new trials are required to ensure that these verdicts were not the result of unfair prejudice.

## CONCLUSION

To summarize, we hold that a trial court's decision to deny a severance of offenses is to be reviewed for an abuse of discretion. We also hold that the trial court in this case abused its discretion in denying the appellant's motion to sever because the robberies did not share a distinct or unique modus operandi. Further, this abuse of discretion affirmatively appears to have affected the outcome of the trial. Therefore, the appellant's convictions and sentences are vacated, and this case is remanded to the trial court for new trials consistent with this opinion.

Costs are assessed to the State of Tennessee.

_____
William M. Barker, Justice

CONCUR:

Anderson, C.J.,
Drowota, Birch, J.J.
Byers, S.J.

11