IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 16, 2008

**RICKEY LEE BEAMON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Hamilton County**
**No. 264257    Rebecca J. Stern, Judge**

---

**No. E2008-01138-CCA-R3-PC - Filed September 14, 2009**

---

The Petitioner, Rickey Lee Beamon,[1] appeals the denial of post-conviction relief in the Criminal Court for Hamilton County from his convictions for theft of property valued between $10,000 and $60,000, a Class C felony; two counts of burglary, a Class D felony; aggravated criminal trespass, a Class A misdemeanor; and three counts of theft of property valued at $500 or less, a Class A misdemeanor. For the felony theft, he received a sentence of fifteen years as a career offender. For the two burglaries, he received concurrent twelve-year sentences as a career offender, to be served consecutively to the felony theft sentence. The four misdemeanor sentences of eleven months, twenty-nine days, were ordered to run concurrently to the twelve-year burglary sentences, for an effective sentence of twenty-seven years in confinement. On appeal, he contends that the trial court erred in denying relief because: (1) counsel provided ineffective assistance by failing to sever offenses in case 238463; (2) counsel provided ineffective assistance by failing to include in the appellate record the transcript of the suppression hearing in case 245041; and (3) counsel provided ineffective assistance by waiving the issue of retained counsel of choice on appeal by failing to support his claim through argument, citation to authority, and references to the appellate record. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

David W. Schmidt, Signal Mountain, Tennessee, for the appellant, Rickey Lee Beamon.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; William H. Cox, III, District Attorney General; and Bates W. Bryan, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1]The Petitioner's pro se petition for post-conviction relief lists the Petitioner's name as "Rickey Lee Beamon," although the name is spelled as "Ricky Lee Beamon" in other parts of the record, including counsel's amended petition. We use the name listed in the pleading initiating these proceedings, the pro se petition for post-conviction relief.

**OPINION**

The Petitioner's convictions in case 245041 relate to the theft of a safe, its contents, and video and audio equipment from one home and in case 238463 to the thefts of lawn equipment (mower, hedge cutters, weed eater, and a tool kit) from three other homes. The case involving the safe and entertainment equipment was severed from the other offenses. After his trials, the Petitioner was convicted in one case of two counts of burglary, three counts of theft of items with a value less than $500, and one count of aggravated criminal trespass and in the second case of theft of property valued over $10,000. He received an effective twenty-seven-year sentence of confinement. The evidence included testimony from law enforcement officers who stopped the Petitioner the day of or shortly after the respective crimes and who found some of the stolen items in the Petitioner's car. This court affirmed the convictions. State v. Ricky Lee Beamon, No. E2005-01656-CCA-R3-CD, Hamilton County, slip op. (Tenn. Crim. App. Oct. 5, 2005).

At the post-conviction hearing, counsel testified that he had worked as a trial attorney for fourteen years and had approximately fifteen jury trials, which he said had been primarily criminal cases. He said he had worked on appeals in twenty-five state cases and eighteen federal cases. He said he understood how to make a timely objection at trial and said the consequences of failing to object in a timely fashion could result in waiving the issue. He also stated he understood the need to prepare the appellate record and to include citations to the record and to legal authority.

Counsel testified that he was appointed to represent the Petitioner approximately two and one-half years before the post-conviction hearing. He said the Petitioner had already had "a few" attorneys before counsel's appointment. He stated he did not remember the length of time between his appointment and his initial meeting with the Petitioner. He said he discussed both of the Petitioner's cases with him during the four or five times they met before the first case. He said that the first case involved an indictment charging an aggravated burglary, other burglaries, and thefts and that the second case, involving the taking of a safe from a house, alleged both aggravated burglary and theft of property valued at over $10,000. He said he did not remember the amount of time between his appointment and the date of the first trial.

Counsel testified that he discussed the cases with the Petitioner. He said that at some point, the Petitioner wanted to be represented by another attorney. He said he did not remember when this was. He said the Petitioner complained to the trial court. Counsel said he told the trial court that he was familiar with the case and could proceed to try it, although he said he told the trial court that he did not object to having another attorney handle the case. He said that he told the Petitioner that he could proceed pro se and that he thought the trial court also stated this to the Petitioner. However, he said the Petitioner stated that he did not want to proceed pro se and that he would hire another attorney because counsel was not knowledgeable enough about the case to try it. Counsel said this occurred regarding the first trial. He said that as the trial date approached, however, the Petitioner stated he did not want to hire another attorney. Counsel said that he brought the Petitioner clothing to wear for the trial but that the Petitioner rejected the clothes and wore his prison uniform instead.

Counsel testified that he was able to communicate with the Petitioner. He said he spoke with the Petitioner and obtained the Petitioner's recollection of events, although he said the Petitioner had

been under the influence of drugs at the times of the events in the indictments. He said the Petitioner had been stopped by law enforcement on July 29, 2001, after having been seen by the neighbors, who telephoned the police. He said the Petitioner spoke to the neighbors before driving away. Counsel stated he went to the scene of the crimes. He said he did not try to obtain the 9-1-1 tapes.

Counsel testified he filed a severance motion. He said that at the severance hearing, the trial court properly determined that the events from the first indictment would be tried together because they occurred at the same time and were part of the same scheme. He said the trial court properly found that the second incident was not part of this same scheme and severed it from the other offenses. Counsel stated that trying the bulk of the burglaries together was one of the case's problems. He said that the severance motion was his idea and that he discussed it with the Petitioner. He said one of their concerns in the motion was that the Petitioner would not receive a fair trial if the jury saw all the burglaries in one trial. He said he and the Petitioner wanted to sever "everything." He said that they lost on the issue of common scheme or plan but that they won on the issue of severing the aggravated burglary, which occurred on another date. He thought that he raised the non-severance of the burglaries as an issue on appeal but that it had been some time since he appealed the case. He said he did not cite any law pertaining to severance of offenses in his appellate brief because the state of the law was adverse to the claim. He said the law was clear that if cases occurred the same day or were part of the same scheme or plan, the cases were not severable.

Counsel's "Motion for Severance of Offenses," included in the appellate record on the Petitioner's direct appeal and in the present proceedings, lists case numbers 238463 and 245041 in the caption. The brief motion states that the then-Defendant "would move for severance of the charges that are up coming for December 9, 2003." The transcript from the hearing reflects the following dialogue.

> Petitioner's counsel: "The first two – well, the first three happened all the same day and then that's – "
>
> Trial court: "You are talking about case 238463?"
>
> Petitioner's counsel: "That's correct, Your Honor."
>
> Trial court: "Okay."
>
> Petitioner's counsel: "And then the next case happened I believe what, a few weeks –"
>
> The State: "That was on June 7th, 245041 occurred and it was July 29th when 238463 occurred. We agree with [Petitioner's counsel's] motion that those two sets of cases should be separated."
>
> Trial court: "Okay. The two indictment numbers as far as that motion goes will be sustained."

The trial court's minutes from December 9, 2003, state that the Defendant's motion for severance was sustained and that case 238463 "will be tried first."

Counsel testified that he appealed the admission of photographs. He said that the defense did not know who took the State's photographs and that he objected to their admission on hearsay grounds. He said that he would have included citation to law in his brief had any existed to support his position and that he raised the issue to preserve it. He said that because the case involved only one set of photographs, the appellate court knew to what he referred. He said the photographs were not dispositive of the case. He said that he did not recall whether the court did not review the issue due to lack of citations to the record.

Counsel testified that the Petitioner told him and the trial court on the day of trial that the Petitioner had retained other counsel. He said the Petitioner claimed that retained counsel had received payment, which was documented by a receipt. Counsel said retained counsel did not enter an appearance for the Petitioner. Counsel stated that he went to retained counsel's office during the second trial's lunch recess. He said he spoke with retained counsel's partner. Counsel said that the partner was that office's trial attorney, that retained counsel did not try cases, and that neither the partner nor a secretary knew of the Petitioner's case. He said that at this point, the second trial had already begun. He said he did not think or remember that the trial court told the Petitioner that he could continue pro se or that the Petitioner suggested he would proceed as his own attorney. Counsel said that he was still the attorney of record and had to try the case because retained counsel did not enter an appearance on the Petitioner's behalf.

Counsel testified that he filed a suppression motion for the second trial "early on." He said Trooper Hoppe's testimony from the suppression hearing was as follows. Trooper Hoppe testified at the hearing that he had stopped a car on the highway and was speaking to a man from the car when the Petitioner almost hit him with his car. Trooper Hoppe said he chased the Petitioner and stopped the Petitioner's car. He said the Petitioner was nervous. The trooper had the Petitioner step out of the car to undergo DUI tests. He said he thought the Petitioner was potentially driving under the influence. He said the Petitioner told him he needed to use the bathroom. He said he allowed the Petitioner to go to the bushes to relieve himself and told him to shake the bushes. He said that the Petitioner ran away but that he still had the Petitioner's driver's license.

Counsel testified that he appealed the validity of the stop issue. He said the Petitioner almost hit the trooper with his car. He stated the basis for the trooper to stop the Petitioner's car was not that the Petitioner had driven over the road's white line but rather that he had almost struck the trooper, who was standing in the shoulder. Counsel stated that the record did not reflect how closely the Petitioner drove to the trooper, although he stated the trooper said the Petitioner had almost hit him, thereby giving the trooper reasonable suspicion to chase and stop the Petitioner.

The Petitioner testified that he did not remember the date when he met counsel, although he stated that it may have been five months before the first trial. He said that he met with counsel a couple times and that his recollection of their meetings varied "totally" from that of counsel. He stated, "The communication barrier [sic] between me and [counsel] had totally broke down." He said that they would become upset with each other and that one of them would walk out of their

meetings. He denied that counsel had spoken with the Petitioner about proceeding pro se with the first case. He said he told counsel before the first trial that he had retained other counsel.

The Petitioner testified he felt he would not receive adequate representation from counsel. He said counsel did not discuss the case with him, keep him informed of the status of the case, or file any motions in the case. He said that the walking out of the discussions precluded them from discussing the case. He said he wanted counsel to file motions for discovery and for exculpatory evidence. He said counsel did not provide him with any filings for either the first or second case.

The Petitioner testified that he obtained an affidavit from an inmate, Johnny Cross, in which he claimed that counsel, during his representation of Cross, told Cross that the Petitioner had been caught "red-handed" at a crime scene and that the Petitioner was going to jail. The Petitioner testified that he informed the trial court of these comments and the fact that counsel was talking to another client about the Petitioner's case. We note the two-part affidavit also states that the trial court told Cross, who apparently had fired other attorneys, that he was "another Ricky Beamon" and that he would represent himself if he fired counsel, who was appointed to his case.

The Petitioner testified that he asked the trial court to remove counsel from his cases. He denied that the trial court suggested he could proceed pro se, and he said he would not have proceeded pro se if given the option. He said he hired an attorney for trial. He submitted documents into the record in which he claimed that counsel was trying to thwart his appeal, that counsel would not preserve a transcript, and that counsel had no intention of pursuing the appeal. He said he asked the trial court to remove counsel from the appeal. He claimed, as well, that he never received any updates on his appeal from counsel and that he learned on his own about the result of the appeal. He said that he did not receive a fair trial with counsel as his attorney and that counsel did not properly represent him.

On cross-examination, he testified that if "evidence [does not] fit, . . . you must acquit." He disagreed that the evidence showed he was caught at the scene of the crime. When asked to identify which evidence did not show his guilt, he stated, "The evidence period." He agreed, however, that he was apprehended with $15,000, bonds, a passport, and other items, belonging to a victim, in his car. He agreed he was apprehended on another occasion with lawn equipment taken from the earlier burglaries in his car. He agreed that he was seen wandering around the neighborhood in which the equipment was stolen asking people if he could mow their grass. He agreed that his car was identified as the one leaving the house from which a lawn mower was taken.

Regarding exculpatory evidence, the Petitioner testified that he thought "the photographs that my attorney mentioned should have been filed." He also stated they did not have the opportunity to obtain evidence regarding Danny Hooten. He denied the State's claim that no exculpatory evidence existed. He said he asked his attorneys to obtain a 9-1-1 tape because he claimed the statement on the tape varied from the witness's trial testimony, although he stated he had not heard either the tape or the telephone call when it was being made.

The Petitioner said that retained counsel telephoned the trial court to obtain a continuance when he was out of town the day of trial and that the trial court refused to grant one. He said the trial

court did not give retained counsel the opportunity to represent the Petitioner, although he said he told the trial court that he did not want counsel as his attorney and that he had hired retained counsel.

Terri Lashelle Thurman, the Petitioner's fiancee, testified that she hired retained counsel. She said she and other relatives of the Petitioner went to retained counsel's office, although she admitted the other family members were there for their own legal matters. She said that she discussed the Petitioner's case with retained counsel and that he said he would appear at the Petitioner's next court date provided she paid a down payment for his services for the Petitioner. She said she obtained a receipt for her $800 payment signed by the office secretary on January 19, 2004. She said retained counsel promised he would be at the Petitioner's next court appearance. She said she informed the trial court the day of trial that she had hired retained counsel for the Petitioner when counsel stood up for the Petitioner's case. She said that the trial court asked her if retained counsel were present, that she said he was not there, and that she did not know why he was not in court. She said the trial court recessed for retained counsel to be contacted. She said she spoke with the same office employee who initialed the receipt. The employee told her that retained counsel was out of town and that they thought the case had been "passed." She said the employee called the trial court. Ms. Thurman stated that after the recess, the trial court said that retained counsel was not present, that counsel would continue to represent the Petitioner for the trial, and that she should get her money back from retained counsel. Ms. Thurman said she recouped her $800. The State offered no proof.

The trial court denied relief after finding the Petitioner had not demonstrated counsel performed deficiently. The trial court stated that counsel had represented the Petitioner adequately and reasonably and that if counsel had in fact made errors during the representation, the errors did not have any prejudicial effect on the result of the trial. Regarding the Petitioner's asserted right to retained counsel of choice, the trial court stated that all parties were ready for trial the day the Petitioner claimed someone had retained counsel for him. The trial court stated that it granted a recess for the Petitioner to obtain retained counsel's attendance. The trial court stated that retained counsel was out of town and that his office thought the matter had been "passed." The trial court stated that if retained counsel had in fact been retained to represent the Petitioner, retained counsel would have appeared in court and said he was ready to proceed with the trial and that the court would have removed counsel from the case. The trial court stated that a party could not come to court the day of trial and announce new representation.

## I. SEVERANCE

The Petitioner claims that he received the ineffective assistance of counsel when counsel failed to sever the counts in case 238463. He claims trial counsel's severance motion exemplified deficient performance because it did not move for the severance of the burglary counts in case 238463 and because trial counsel did not argue at the hearing for the severance of the burglary counts in that case. The Petitioner claims that "had counsel made an appropriate and clear motion, [the Petitioner] believes the trial court would have granted the motion to sever the counts" because the offenses were not part of a common scheme or plan. Relying on State v. Shirley, 6 S.W.3d 243 (Tenn. 1999), in which the Tennessee Supreme Court held the trial court erred in not granting a severance when two robberies occurred within thirty minutes of each other, the Petitioner states his

theft offenses were not part of a common scheme or plan and should have been severed because the victims and the items involved were different in each count.

The State replies that the trial court properly denied post-conviction relief after finding the Petitioner did not prove by clear and convincing evidence that he received the ineffective assistance of counsel. The State asserts that trial counsel did not perform deficiently by failing to succeed on a motion to sever the counts in case 238463. The State also asserts that no proof showing that the motion was either defective or unclear was entered into evidence and that the post-conviction relief hearing testimony reflected that trial counsel stated he and the Petitioner wanted to sever all counts and cases.

The burden in a post-conviction proceeding is on the Petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2006).

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the Petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough because the Petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that the counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability means a "probability sufficient to undermine confidence in the outcome." Id.

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were "within the range of competence demanded of attorneys in criminal cases." Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Baxter, 523 S.W.2d at 936. Also, in reviewing counsel's conduct, a "fair

assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. See DeCoster, 487 F.2d at 1201; Hellard, 629 S.W.2d at 9.

Separate offenses may be permissively joined if they are part of a common scheme or plan or are of the same or similar character. Tenn. R. Crim. P. 8(b). If, however, they are not part of a common scheme or plan or if the evidence of one is not admissible at the trial of the other, the defendant has a right to a severance of offenses. See Tenn. R. Crim. P. 14(b)(1). A severance of such offenses shall be granted (1) before trial if it is deemed appropriate to promote a fair determination of the defendant's guilt or lack thereof or (2) during trial if it is deemed necessary to achieve such a fair determination. Tenn. R. Crim. P. 14(b)(2)(A), (B). The issue includes consideration of the number of offenses, the complexity of the evidence, and the difficulty with which the jury would be able to distinguish the evidence and apply the law as to each offense. Whether or not to grant a severance rests within the sound discretion of the trial court. State v. Wiseman, 643 S.W.2d 354, 362 (Tenn. Crim. App. 1982).

Our supreme court has recognized three categories of common scheme or plan evidence: "(1) offenses that reveal a distinctive design or are so similar as to constitute 'signature' crimes; (2) offenses that are part of a larger, continuing plan or conspiracy; and (3) offenses that are all part of the same criminal transaction." State v. Moore, 6 S.W.3d 235, 240 (Tenn. 1999). In the present case, the Petitioner claims that the crimes were neither part of a larger, continuing plan nor part of the same criminal transaction. The Petitioner states that the offenses are similar to the facts in State v. Shirley, 6 S.W.3d 243 (Tenn. 1999), a case involving an analysis of purported signature crimes. Thus, we consider whether the offenses were distinctive signature crimes. Evidence of signature crimes is admissible under limited circumstances. Such evidence is typically offered to prove a defendant's identity. See State v. Moore, 6 S.W.3d at 239. On direct appeal of the Petitioner's case, the State argued two approaches: (1) the crimes required mandatory joinder as they were part of the same criminal episode, and (2) the crimes were properly permissively joined because the evidence, specifically the geographic area, short time frame, and the fact that the Petitioner was apprehended shortly after the offenses with the stolen items in his car, showed a common scheme or plan.

For the offenses to reveal a distinct design, the modus operandi employed "must be so unique and distinctive as to be like a signature." State v. Moore, 6 S.W.3d at 240; State v. Carter, 714 S.W.2d 241, 245 (Tenn. Crim. App. 1986). Although the offenses do not have to be identical in every respect, a common scheme or plan is not found merely because there was evidence that the Petitioner committed the multiple offenses or because the similarities of the offenses outweigh the differences. Moore, 6. S.W.3d at 240-41. "Rather, the trial court must find that a distinct design or unique method was used in committing the offenses." Id. at 241. The method of perpetrating the crimes must employ "'such unusual particularities'" that a reasonable person could believe it

-8-

unlikely that different people were using this method. Id. at 240 (quoting Harris v. State, 227 S.W.2d 8, 11 (Tenn. 1950)).

The danger in not severing offenses is that the jury will improperly find the accused guilty of a crime by inferring his propensity to commit the crime from the evidence of the other crimes. Id. at 239. Thus, the question is primarily one of evidentiary concern. Id.; see Tenn. R. Evid. 404(b).

The evidence from the post-conviction hearing reflects that trial counsel acknowledged that one of the problems in case 238463 was that several burglaries and thefts would be tried together. He said one of his concerns in the motion was that the Petitioner would not receive a fair trial if the jury saw all the burglaries in one trial. Counsel testified that he wanted to sever "everything," but that the relevant law was adverse to their position. The Petitioner concedes that the offenses in case 238463 occurred on the same day "at approximately the same time and location," although he maintains that the offenses were not "part of a common scheme or plan" because the victims and property involved were different in each count.

The Petitioner has not shown a reasonable probability that the result of the proceeding would have been different had the counts been severed in case 238463. In view of the record, the events occurring on July 29, 2001, from roughly 4:00 p.m until 5:00 p.m. were permissively joined. The offenses were part of a common scheme or plan showing a signature modus operandi, and the evidence in one count would have been admissible in the other counts. See Tenn. R. Crim. P. 8(b), Advisory Comm'n Cmts. As such, the Petitioner did not have the right to sever the counts. See Tenn. R. Crim. P. 14(b)(1).

The evidence presented at the trial showed that the Petitioner employed the same modus operandi in each of the crimes. He rode around a neighborhood on July 29, 2001, in a cream-colored Buick. Calls to 9-1-1 regarding the Petitioner and stolen yardwork equipment originated from this neighborhood at 4:26 p.m. and 5:02 p.m. The Petitioner drove his car into someone's driveway, and when confronted by the resident, asked if he could mow the lawn, yet the Petitioner had no equipment in his car. The resident saw the Petitioner's car, once with the trunk closed and a second time two blocks away ten to fifteen minutes later, with the trunk open, lawn equipment protruding from it, and backing out of a driveway. During approximately one hour, the Petitioner went through the same neighborhood, with the crime scenes of three houses being two blocks apart, and entered garages to steal lawn equipment. The evidence in each of the cases was relevant to show the Petitioner's common scheme or plan, motive, and lack of mistake or accident for the crimes. Our supreme court has stated that the drafters of the Tennessee Rules of Criminal Procedure "intend that a common scheme or plan for severance purposes is the same as a common scheme or plan for evidentiary purposes." State v. Moore, 6 S.W.3d 235, 240 n.7 (Tenn. 1999). Additionally, the evidence presented in the post-conviction hearing and as stated in this court's opinion affirming the convictions shows the Petitioner was apprehended shortly after the burglaries in the cream-colored Buick that had been seen in the area where the items had been stolen and that contained the stolen lawn equipment.

The Petitioner claims that his case is analogous to State v. Shirley, 6 S.W.3d 243 (Tenn. 1999), and that because each offense involved different victims and items, no common scheme or plan can be shown. His claims are flawed. First, the facts of Shirley are distinguishable from those of the Petitioner's case. In Shirley, the Tennessee Supreme Court held that the evidence did not reflect a distinctive method of committing the robberies. The victims' descriptions of the robberies did not reveal a signature modus operandi for committing the crimes. The perpetrator in Shirley did not wear the same clothing for the offenses, nor did he make the same request of the cashiers. The perpetrator did not leave the crime scenes in the same way but departed with or without a getaway car. The perpetrator removed his mask for two crimes, but not at the same time for each crime. Additionally, testimony regarding the perpetrator's gloves varied. Shirley, 6 S.W.3d at 248-50.

In the Petitioner's cases, the evidence reflects a signature modus operandi for the crimes. Yardwork equipment was stolen from three homes. A cream-colored Buick was seen at three homes, including one where a resident confronted the Petitioner after he drove a cream-colored Buick into the driveway. Another resident also identified the Petitioner as the man she spoke with and who was at the door to her garage. The offenses occurred within an area of two blocks in a brief period of time. The unique method used in committing the offenses was driving through an area in a cream-colored Buick and placing stolen yardwork equipment into the car's trunk. One witness saw the Petitioner get out of the car and speak with the resident, and this same resident later saw the same car backing out of a driveway shared by two homes. The resident obtained the license plate number and this number was conveyed to the police. The Petitioner was apprehended shortly thereafter in the cream-colored Buick with this license plate. All of this evidence–the time frame, geographical area, identification of the Petitioner, and use of a cream-colored Buick–was relevant to show the Petitioner's identity as the perpetrator of the crimes. In view of this evidence, the offenses share "such unusual particularities" that a reasonable person would believe it unlikely that different people were using this method in the same neighborhood at the same approximate time. The Petitioner is not entitled to relief.

Second, the Petitioner does not provide any authority for his claim that differing victims and items involved require severance of offenses when the offenses occurred sequentially within one day. Our supreme court has stated that mere similarities between multiple offenses do not establish a common scheme or plan. State v. Shirley, 6 S.W.3d 243, 248 (Tenn. 1999). In Shirley, the defendant used a black ski mask, gloves, and a gun to commit several robberies. Id. at 249. The court stated the methods of committing the robberies did not reveal a sufficiently distinctive character to reflect a common scheme or plan, such that the robberies should not have been tried together. Id. at 248-50 Here, Petitioner used a unique method to commit the robberies. He used the same cream-colored Buick and stole only yardwork equipment. Petitioner committed the robberies in a specific neighborhood during a specific time-period. The Petitioner is not entitled to relief.

## II.  SUPPRESSION HEARING TRANSCRIPT

The Petitioner contends he received the ineffective assistance of counsel on appeal when counsel failed to include in the appellate record the transcript from the suppression hearing in case 245041. He asserts that the failure of trial counsel to ensure that the testimony and the trial court's findings were included in the record constituted deficient performance that prejudiced the Petitioner

by "preventing the court from considering the matter on appeal." He claims that Trooper Hoppe's hearing testimony varied from direct examination to cross-examination regarding how many times the Petitioner's car crossed the shoulder line. He relies on State v. Ann Elizabeth Martin, No. E1999-01361-CCA-R3-CD, Hamilton County (Tenn. Crim. App. 2000), to claim that this court would have held the trial court erred in not suppressing the stop because no reasonable suspicion or probable cause that a crime had been committed existed. The State responds that the trial court properly denied relief because the Petitioner failed to demonstrate prejudice by clear and convincing evidence.

The post-conviction hearing testimony revealed that counsel filed a suppression motion regarding Trooper Hoppe's stop of the Petitioner's car. Counsel summarized the trooper's testimony as follows. The Petitioner went onto the shoulder of the road and almost hit the trooper with his car. The trooper, who had been assisting others at the time, pursued the Petitioner. When he stopped the Petitioner's car, he noted the Petitioner was nervous. Because the trooper suspected the Petitioner might have been driving while under the influence, he wanted the Petitioner to submit to DUI tests. He allowed the Petitioner to go near the wooded area to relieve himself. The Petitioner fled. The trooper still had the Petitioner's driver's license. Counsel testified that he appealed the suppression issue. He said the basis for the trooper to stop the Petitioner's car was not that he had driven over the road's white line into the shoulder but rather that he had almost struck the trooper, thereby giving the trooper probable cause to chase and stop the Petitioner.

The testimony from the suppression hearing was as follows. Highway Patrol Trooper Kevin Hoppe testified that on June 7, 2001, he was working and stopped to assist a disabled car on the southbound side of I-75. He said that while speaking with the middle-aged couple in front of the disabled car, he saw the Petitioner's car traveling southbound in the "slow lane" and crossing "several times" onto the shoulder, where he and the disabled car were. He said he told the man to step out of the way because the Petitioner's car was going to strike them. He said the Petitioner's car passed them and did not move into the "fast lane," even though there had been no traffic there at the time. He said he did not see a license plate on the Petitioner's car. He explained that he always stood facing traffic to see oncoming traffic to avoid being hit. He said that the Petitioner's car alarmed him. He said his patrol car was parked with its lights illuminated behind the disabled vehicle. He said the Petitioner came "very close" to the back of the patrol car. He said he chased the Petitioner approximately one mile to stop the car.

On cross-examination, Trooper Hoppe testified that he did not remember either the name of the couple from the disabled car or the problem with the car, although he said he remembered the car's hood had not been raised. He said that the wife had been seated in the car and that he spoke to the husband at the front of the car. He described the man as a white male approximately fifty years old. He said the Petitioner drove over the "fog line" at the west edge of the roadway. He said that there had not been much traffic and that most people would change into the "fast lane" when seeing an officer stopped in the shoulder. He said the Petitioner did not change lanes and crossed over into the shoulder area. He said the Petitioner crossed so far into the shoulder that he would have hit the patrol car. He said the Petitioner twice crossed into the shoulder and continued to drive in the middle of the shoulder before he returned to the "slow lane." He said he chased the Petitioner

because he thought the Petitioner might be a drunk driver and because he saw no license plate on the car, both reasons that he said he included in his report.

Trooper Hoppe testified that the Petitioner's car was between 100 and 150 yards away from him when the car crossed the line into the shoulder. He said he continued to watch the car until it passed him. He said he watched the car cross the shoulder line approximately five times. He said the Petitioner drove in the shoulder the second time about thirty to forty feet behind the parked patrol car. He said the car was close enough for him to distinguish the driver's race. He said the driver did not look at him and the disabled car's driver and passenger when he passed them.

Trooper Hoppe testified that after he stopped the Petitioner's car, he approached the car on its passenger side. He said he saw the Petitioner moving around in the car. He said he asked the Petitioner what was going on and saw the Petitioner hold his driver's license in his right hand and then drop it "between the seat jam." He said that when asked to produce his identification, the Petitioner said he must have left it at home. Trooper Hoppe said he then saw a beer bottle on the floorboard. He said he asked the Petitioner, whom he said seemed very nervous, to get out of the car. Trooper Hoppe said he reached into the Petitioner's car and retrieved the Petitioner's license from between the seats. He said he was talking to the Petitioner, who then asked if he could relieve himself at the "wood line." The trooper said he noticed a large garbage bag in the front, at which he said the Petitioner looked nervously. The trooper said that he asked the Petitioner what was in the bag and that the Petitioner said it was $5000 to $6000 he had saved. He said he allowed the Petitioner to relieve himself at the wood line. He said, however, that as he walked to the patrol car, he saw the Petitioner run away. He said the Petitioner was not apprehended immediately.

Trooper Hoppe testified that he wanted to investigate because the Petitioner had intentionally hidden his identification from the officer. He said that he stopped the car due to the traffic violation and to the missing license plate but that he was more concerned that the driver was intoxicated. He said he smelled alcohol on the Petitioner after he stopped the car. On redirect examination, the trooper testified that he was unable to have the Petitioner perform the DUI tests because the Petitioner fled.

The trial court found that the trooper had reasonable suspicion to stop the Petitioner. It said the trooper saw the Petitioner cross into the shoulder, drive down the middle of the shoulder, and almost hit the trooper. It said the Petitioner took a long time to stop and had no visible license plate.

The Petitioner cites Ann Elizabeth Martin to claim that briefly crossing the solid white line into the shoulder does not constitute a traffic violation, thereby depriving the trooper of a legal justification for stopping the Petitioner. See id. at 7. We interpret the facts of the stop differently than does the Petitioner. Rather than being pursued and stopped merely for crossing into the shoulder, as he alleges, the transcript testimony also reveals the trooper pursued the Petitioner's car because the Petitioner almost hit the trooper, who at the time was standing on the shoulder assisting a disabled motorist. While trial counsel's failure to prepare an adequate record on appeal precluded this court from reviewing the issue and constituted deficient performance, the Petitioner has not demonstrated that but for trial counsel's failure to include the transcript in the appellate record, there

-12-

is a reasonable probability that the information gained from the stop would have been suppressed. He is not entitled to relief.

### III.  RETAINED COUNSEL

The Petitioner claims counsel provided ineffective assistance by waiving the Petitioner's counsel of choice issue by failing to support his claim through argument, citation to authority, and references to the appellate record.  He claims he was denied his Sixth Amendment right to counsel of choice when the trial court did not grant a continuance for him to secure retained counsel's presence at trial.  He cites United States v. Gonzales-Lopez to claim that a "choice-of-counsel violation occurs whenever the defendant's choice is wrongfully denied."  548 U.S. 140, 151 (2006). According to the Petitioner, had appellate counsel properly appealed the counsel of choice issue, this court would have vacated the convictions and ordered new trials because the Petitioner was denied his Sixth Amendment right to counsel of choice on the day of trial.

The State replies that the trial court properly denied the petition because counsel had not been deficient by failing to include citations to legal authority on this issue in his brief.  The State says counsel testified that he was aware of the need to provide citations to legal authority to bolster his argument on appeal but that no legal authority existed to support the Petitioner's claim.  The State asserts the hearing testimony also showed that the Petitioner's alleged retained counsel never entered an appearance on the Petitioner's behalf and that retained counsel's office had no record of the Petitioner's case.

For another reason, the Petitioner is not entitled to relief.  Although he cites Gonzalez-Lopez to say he has an absolute right to counsel of choice, even to assert this right on the first day of trial, he ignores the rest of the case, in which the Supreme Court states that their holding did not limit "the trial court's wide latitude in balancing the right to counsel of choice against . . . the demands of its calendar."  548 U.S. at 152.  The Court refers to Morris v. Slappy, 461 U.S. 1, 11-12 (1983), to state that :

> "[t]rial judges necessarily require a great deal of latitude in scheduling trials.  Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel."

Id., 461 U.S. at 11-12 (quoting Ungar v. Sarafite, 376 U.S. 575, 589 (1964)).

The Petitioner has not demonstrated a reasonable probability that the result of the proceeding would have been different if counsel had articulated and supported this issue on direct appeal.  He is not entitled to relief.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE