IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
November 27, 2018 Session

## STATE OF TENNESSEE v. ANTONIO THOMAS

**Appeal from the Criminal Court for Knox County**
**No. 110006     G. Scott Green, Judge**

---

### No. E2017-02378-CCA-R3-CD

---

Aggrieved of his Knox County Criminal Court jury conviction of possession of a firearm by a convicted felon, the defendant, Antonio Thomas appeals, challenging the sufficiency of the convicting evidence and arguing that the trial court erred by admitting into evidence certain Facebook messages in the absence of sufficient proof of the authenticity and reliability of the messages.  Discerning no error, we affirm.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Gerald L. Gulley, Jr., (on appeal), and Philip Lomonaco and Christine Morgan (at trial), Knoxville, Tennessee, for the appellant, Antonio Thomas.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; and Charme P. Allen, District Attorney General; and TaKisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Knox County Grand Jury returned a five-count indictment alleging four alternative counts of possession of a firearm by a convicted felon and one count of the criminal gang enhancement.

At the July 2017 trial, Knoxville Police Department Officer Raiques Crump testified that he responded to a call of a possible disturbance at Harriet Tubman Park on October 1, 2016.  When Officer Crump arrived at the park, he encountered the complainant, Ms. Barbara Ann Tate Mills, who told him that the defendant had brandished a firearm after he and she argued about the food available at a homecoming

celebration being held at the park.  Officer Crump described Ms. Mills as "very shaken up."

Ms. Mills testified that she had organized a homecoming celebration for former residents of Austin Homes to be held at Harriet Tubman Park.  As the celebration went on, Ms. Mills began a Facebook Live recording.  During the recording, which was played for the jury, someone can be overheard indicating that there was going to be a drive by shooting.  At that point, Ms. Mills ended her video and called 9-1-1.  As she was speaking to the 9-1-1 operator, Ms. Mills heard someone ask "who got the best food?"  Ms. Mills responded, "Chef Moe's, but if you're going to order you need to pull over because I just called the police."  She described what happened next:

> And that's when he told me to move out the way.  He held the gun up and told me to move out the way, he was going to shoot over there and I was like, no, you not going to shoot.  And then I told her -- his girlfriend was driving the car -- and I said here come the police and she sped off.

Ms. Mills identified the defendant, whom she had known for a long time, as the man who had brandished a firearm and threatened to shoot into the crowd.  Ms. Mills said that she was "very familiar with guns" because her sister was "licensed to carry guns" and because she had grown up around guns living in Austin Homes.  Ms. Mills said that the incident frightened her to the point that she thought she might have a heart attack.

Ms. Mills said that after the offense, she went to a nearby tent, and while discussing the offense with others, had the opportunity to describe the woman who had been driving the car.  At that point, another person present in the tent "pulled her up on Facebook and said is this her?"  When Ms. Mills realized that the woman in the Facebook profile was the same as the one driving the car, Ms. Mills "sent her a friend request first and she accepted it."  Ms. Mills then "in-boxed her and told her that she know she was wrong, her and her boyfriend was wrong of what they done and that they going to jail."  Ms. Mills identified print outs of the messages.  At 9:36 p.m. on October 1, a message came in that read, "Barb, what the hell you talking about?  This is Tony.  I have no clue what you're talking about."  Ms. Mills added that the defendant was known as "Tony."  After Ms. Mills replied, "[W]hen you pulled up and had that gun clearly you know, that's the end of my discussion."  A few minutes later, the person that claimed to be "Tony" replied,

> I didn't pull it on nobody cause somebody was following us from Morningside so I turned down that way, I seen you and I stopped and I seen a car coming up the hill and the river and

told you to move, That's it. Everything else is clueless bullsh[**] because you know me better than that. I'm not on no bullsh[**] and I've been staying in my own lane. For real.

During cross-examination, Ms. Mills acknowledged that the defendant had his own Facebook profile but said that she elected to message his girlfriend because she "was trying to get who the girl was."

Upon questioning by the trial court, Ms. Mills reiterated that she was very familiar with guns and that she had no doubt that the defendant had possessed a gun. She said that she saw the gun, which she described as "a black nine," in the defendant's lap and that the clip "was in it." She said that she was "certain that it was a gun" as opposed to an air gun or BB gun.

Silvia Washington testified on behalf of the defendant that the defendant was a passenger in her car on October 1, 2016. She said that as they drove near the event, the defendant asked her to stop so he could speak to a woman he knew. Ms. Washington testified that the defendant and the woman exchanged pleasantries and that the defendant asked the woman "who had the best food." Ms. Washington said that, at that point, she pulled the car over because she "didn't want to get cited for sitting in the middle of the road holding up traffic." She maintained that neither she nor the defendant was armed and that "there was nothing else to say that happened because nothing occurred." She said that Ms. Mills was not crying or upset when she and the defendant eventually drove away.

During cross-examination, Ms. Washington said that she had not ever accepted Ms. Mills as a Facebook Friend, had not ever deleted Ms. Mills as a Facebook Friend, and had not exchanged messages with Ms. Mills on Facebook.

At the conclusion of this proof, the jury convicted the defendant as charged of four alternative counts of possession of a firearm by a convicted felon.[1] Following the jury's verdicts, the State chose to dismiss the remaining count relative to gang enhancement.

The defendant filed a timely but unsuccessful motion for new trial followed by a timely notice of appeal. In this appeal, the defendant challenges the ruling of the trial court allowing the admission of the Facebook messages and the sufficiency of the convicting evidence.

---

[1] The trial court merged the jury's verdicts into a single conviction.

## I. Facebook Messages

As an initial matter, we note that, in support of his argument that the trial court erred by admitting the Facebook messages into evidence, the defendant cites a single case for the proposition that, as a general matter, the admission or exclusion of evidence is subject to an abuse of discretion standard of review. He does not cite a single authority in support of his argument that the trial court erred by admitting this specific piece of evidence under the circumstances presented in this case. The rules of appellate procedure require that the appellant's brief contain an argument "setting forth . . . the contentions of the appellant with respect to the issues presented, and the reasons therefor . . . with citations to the authorities . . . relied on," *see* Tenn. R. App. P. 27(a)(7), and the rules of this court provide that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived," Tenn. Ct. Crim. App. R. 10(b). In this instance, the defendant's citation of authorities is grievously wanting. Given, however, that the defendant's position was more fully fleshed out in oral argument, we will address the issue despite the deficiency of the defendant's brief.

Tennessee Rule of Evidence 901 provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." Tenn. R. Evid. 901(a). Both Rule 901 and the common law designate the trial court as the "arbiter of authentication issues," and, accordingly, that court's ruling will not be disturbed absent a showing that the court clearly abused its discretion. *See* Tenn. R. Evid. 901, Advisory Comm'n Comments; *State v. Mickens*, 123 S.W.3d 355, 376 (Tenn. Crim. App. 2003). An abuse of discretion occurs when the trial court applies an incorrect legal standard or reaches a conclusion that is "illogical or unreasonable and causes an injustice to the party complaining." *State v. Ruiz,* 204 S.W.3d 772, 778 (Tenn. 2006), *overruled on other grounds by State v. John David Patterson*, No. M2016-01716-SC-R11-CD, ___ S.W.3d ___ (Tenn. Dec. 10, 2018) (citing *Howell v. State*, 185 S.W.3d. 319, 337 (Tenn. 2006)); *see State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999).

In this case, Ms. Mills testified that following the incident at the park, another woman showed her a picture on Facebook and asked her if that was the woman who had been driving the car. Ms. Mills indicated that it was, and then she sent a Facebook Friend request to the woman. After the woman accepted the request, Ms. Mills exchanged messages with her about the incident. At one point, a person named "Tony," a name by which the defendant was also known, responded to the messages sent by Ms. Mills. Ms. Mills confirmed that she accessed the messages in the prosecutor's office and watched as the prosecutor printed the messages. Ms. Mills viewed the printouts of the messages and confirmed that they were, in fact, the messages she had exchanged on

-4-

October 1, 2016. That Ms. Mills could not say with certainty that the defendant was the "Tony" who had responded to the messages was irrelevant to the determination whether the messages were properly authenticated under Rule 901; it was enough that Ms. Mills testified that the printouts were what they purported to be. Under these circumstances, the trial court did not err by admitting the evidence over the defendant's objection.

## II.     Sufficiency

The defendant also challenges the sufficiency of the convicting evidence, arguing that the State failed to establish beyond a reasonable doubt that he possessed an actual firearm. The State asserts that the evidence was sufficient.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

Code section 39-17-1307(b)(1) provides that it is an offense to possess "a firearm, as defined in § 39-11-106" when one "[h]as been convicted of a felony crime of violence, an attempt to commit a felony crime of violence, or a felony involving use of a deadly weapon; or . . . [h]as been convicted of a felony drug offense." T.C.A. § 39-17-1307(b)(1). Code section 39-17-1307(c) provides that "[a] person commits an offense who possesses a handgun and has been convicted of a felony." *Id.* § 39-17-1307(c). The defendant does not challenge his status as a convicted felon as defined by the statute and argues only that Ms. Mills' testimony was insufficient to establish that he possessed a firearm or handgun as defined by Code section 39-11-106. That statute provides: "'Firearm' means any weapon designed, made or adapted to expel a projectile by the action of an explosive or any device readily convertible to that use." *Id.* § 39-11-106(11).

-5-

"'Handgun' means any firearm with a barrel length of less than twelve inches (12″) that is designed, made or adapted to be fired with one (1) hand[.]" *Id.* § 39-11-106(16).

Here, Ms. Mills testified that she had grown up around guns, that her sister was licensed to carry a firearm, and that she was otherwise very familiar with different types of guns. She stated unequivocally that the defendant had possessed an actual handgun with a clip in it. She was adamant that what she had seen was not a BB gun or other similar item. Although the defendant correctly notes that Ms. Mills's version of the events evolved over time, her insistence that the defendant possessed an actual handgun did not. Additionally, although the defendant argues that Ms. Mills was a less than credible witness, witness credibility lies beyond the purview of this court. In our view, the evidence presented was sufficient to support the jury's verdict.

*Conclusion*

Based upon the foregoing analysis, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE

-6-