IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 2, 2021 Session

# IN RE CONSERVATORSHIP OF JOHN BRUCE WILSON, JR.

**Appeal from the Chancery Court for Montgomery County**
**No. MC-CH-CV-CP-14-19      Laurence M. McMillan, Jr., Judge**

_____

## No. M2021-00145-COA-R3-CV

_____

This appeal arises from a conservatorship case in which the chancery court authorized the attorneys *ad litem* for the ward of the conservatorship to enter into a compromise and settlement regarding a dispute among the ward and his four siblings over their deceased father's estate. The sole issue on appeal is whether the Chancellor abused his discretion in finding the settlement was in the ward's best interest. Finding no abuse of discretion, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Andrea T. McKellar and Jason E. Havens, Nashville, Tennessee, for the appellant, Bennett Gordon Scott Wilson.

Aubrey L. Brown, Jr. and Leigh T. White, Memphis, Tennessee, for the appellees, Deborah Laverne French, Valerie Dawn Keating, and Meredith Emily Wilson Lounge.

R. Horton Frank, III and David J. Pflaum, Nashville, Tennessee, attorneys *ad litem* for the appellee, John Bruce Wilson, Jr.

## OPINION

### FACTS AND PROCEDURAL BACKGROUND

The ward of this conservatorship is John Bruce Wilson, Jr. ("John Jr."). He is one of five children of the late John Bruce Wilson ("Father"). The other four children are Deborah Laverne French, Valerie Dawn Keating, Meredith Emily Wilson Lounge (collectively, the "Daughters") and Bennett Gordon Scott Wilson ("Scott"). All of the children are adults.

On June 12, 2014, Scott filed a petition in the Chancery Court for Montgomery County seeking a conservatorship for the benefit of his brother, John Jr. The petition alleged that John Jr. had been diagnosed with bipolar disorder, generalized anxiety disorder, and schizoaffective disorder and was incapable of managing his own affairs. On August 8, 2014, following the appointment of a guardian *ad litem* and an evidentiary hearing, the chancellor found that John Jr. was a disabled person as that term is defined by the conservatorship statute and in need of assistance, protection and supervision. Based on these findings, the chancellor created the conservatorship and appointed Scott as the conservator of the person and property of John Jr.

Father died one month later on September 9, 2014.[1] Father had a substantial estate, including as many as fifty parcels of real estate and more than sufficient liquid assets to afford an attorney to provide guidance concerning his estate planning. Nevertheless, Father acted alone in preparing and executing his Last Will and Testament (the "Will") and the John Bruce Wilson Separate Property Trust (the "Trust").[2] Although it is undisputed that Father was a Tennessee resident, the Will and Trust were fill-in-the blank forms intended for use by California residents. To further complicate matters, Father executed both documents on May 2, 2000, when he was in Florida. Although he signed both instruments before a notary public, there were no witnesses to Father's execution of either instrument.

Pursuant to the Will, all of Father's assets poured over into the Trust. All five of Father's children are beneficiaries of the Trust; however, John Jr. was the principal beneficiary of the Trust while Scott was awarded a smaller beneficial interest than John Jr. and the Daughters an even smaller beneficial interest. More specifically, Father subsequently directed in an Amendment to the Trust that the successor co-trustees,[3] Scott and John Jr., distribute the real estate in kind following his death.[4] Father directed certain specified parcels be conveyed to John Jr., some be conveyed to Scott, and other parcels be conveyed to John Jr. and Scott jointly. All remaining property was to be divided equally among the five children.

---

[1] He was not married.

[2] Father owned approximately fifty parcels of real estate in and around Montgomery County, Tennessee, which he conveyed to the Trust. The parcels were also listed on the Schedule A to the trust instrument.

[3] Father was the Trustee until his death.

[4] The conservatorship rendered John Jr. incompetent to serve as co-trustee of the Trust.

In the months following Father's death, a dispute arose among the children concerning the validity of the Will and Trust.[5] The first of several actions relating to Father's estate was commenced on May 5, 2015, when Daughters filed a Complaint for Declaratory Relief in the United States District Court for the Middle District of Tennessee (the "district court"). Scott and John Jr. were made defendants to the action. The complaint sought to declare the law governing the Trust and, following such ruling, leave to amend the complaint to seek additional relief.

On December 8, 2015, the district court issued a Memorandum Order granting the Daughters' Motion for Partial Summary Judgment as to Choice of Law. Citing Tennessee Code Annotated § 35-15-108, the district court ruled that "the state jurisdiction provision" of the Trust was not valid. The court also ruled that, pursuant to Tennessee Code Annotated § 35-15-107, Florida law applied because Father had executed the Trust while in Florida.

The Daughters subsequently filed an Amended Complaint for Declaratory Judgment and for Breach of Trust. The Amended Complaint alleged that Scott and John Jr., in their capacities as successor co-trustees of the Trust, were guilty of breaches of trust and that the Trust was not executed in compliance with Florida law, which required that an inter vivos trust to be executed in compliance with the formalities of a will. For these and other reasons the Daughters contended the testamentary provisions of the Trust were invalid. The Daughters then filed their Second Motion for Partial Summary Judgment as to Validity and Enforceability of Certain Provisions of the Trust.

In the interim, the Daughters filed a petition in the Montgomery County Chancery (Probate) Court to administer Father's intestate estate, contending he died without a will.[6] Shortly thereafter, Scott made an appearance in the probate proceeding instituted by Daughters and asserted that Father died testate, not intestate, and that the Will should be admitted to probate. On February 4, 2016, the Montgomery County Probate Court ruled that Father's Will conformed to the requirements of Tennessee law for execution of a testamentary instrument, admitted it to probate, and appointed Scott as Executor of Father's estate.

On December 8, 2016, Scott filed a motion in the conservatorship action in the Montgomery County Chancery Court asking the court to appoint independent counsel to represent John Jr. due to conflicts of interest between Scott and John Jr. regarding the district court litigation. Finding that conflicts of interest prevented Scott from acting on

_____

[5] It is undisputed that Father was a Tennessee resident at the time of his death, as well as when he executed the Will and Trust.

[6] It is undisputed that Father was a resident of Montgomery County, Tennessee.

- 3 -

John Jr.'s behalf regarding the Daughter's challenges to the Will and Trust, the chancellor appointed R. Horton Frank, III and David J. Pflaum to serve as John Jr.'s attorneys *ad litem*.

On March 14, 2018, John Jr.'s attorneys *ad litem* filed a Response in Opposition to the Daughters' Second Motion for Partial Summary Judgment in the district court. They argued that the district court lacked subject matter jurisdiction over the Daughters' claims and that the dispositive provisions of the Trust were invalid. Four days later, John Jr.'s attorneys *ad litem* filed a Motion to Dismiss Claims for Declaratory Relief for Lack of Subject Matter Jurisdiction. In their motion, the attorneys *ad litem* asserted that the probate exception to the district court's subject matter jurisdiction deprived it of subject matter jurisdiction.

On July 27, 2018, the district court entered a Memorandum Order that denied the attorneys *ad litems'* motion to dismiss but granted the Daughter's second motion for partial summary judgment. The order contained the following findings: (1) Florida law applied; (2) the Trust was not properly executed pursuant to Florida law because the Decedent failed to properly execute it with two witnesses; and (3) the assets in the Trust "should" pass by intestacy as a result.

On March 28, 2019, following further proceedings and the entry of additional orders that disposed of all claims in the district court action, John Jr.'s attorneys *ad litem* timely filed a Notice of Appeal from the district court's orders. Scott did not appeal from the final judgment of the district court nor did he make an appearance in the appellate court.

On April 1, 2019, the Office of the Circuit Mediators for the United States Court of Appeals for the Sixth Circuit notified counsel of record, specifically John Jr.'s attorneys *ad litem* and the Daughters' counsel, that the appeal had been designated for mediation.

On May 29, 2019, the attorneys *ad litem* filed a Motion for Instructions and/or Appointment of Guardian *ad litem* in the Montgomery County Chancery Court seeking to modify Scott's duties as Conservator due to his conflict of interests. In addition, the attorneys *ad litem* sought instructions from the court as to whether they may independently negotiate a compromise and settlement of the Daughters' claims in the district court action, subject to the chancellor's ultimate approval.

Pursuant to an Agreed Order entered on August 6, 2019, the chancellor modified Scott's duties as the conservator by, *inter alia*, removing from Scott and vesting in John Jr.'s attorneys *ad litem* the authority to:

> 1) independently manage and control on behalf of John the pending litigation and claims in which John is named as a party and/or in which he had an interest, ***and 2) negotiate and submit directly to this Court proposed terms of which John may compromise, settle and/or otherwise resolve all such***

- 4 -

***matters in dispute between he and his siblings,*** *including the matters of Deborah Laverne French, Meredith Emily Wilson Lounge, and Valerie Dawn Keating v. Bennett Gordon Scott Wilson, Successor Co-Trustee and as the Conservator of John Bruce Wilson, Jr., Successor Co-Trustee,* U.S. District Court for the Middle District of Tennessee, No. 3:15-c-0520, John's appeal of a judgment in that case in the United States Sixth Circuit, Case No. 195303, *In re: Wilson Separate Property Trust v. Wilson*, Montgomery County Chancery Court No. MC-CH-CV-TT19-1, and *In re Estate of John Bruce Wilson*, Montgomery Chancery Court, Docket No. MC-CH-CV-PB-15-179, and John's interests as an heir at law of John Bruce Wilson, Sr.

(Emphasis added).

Subsequently, the Sixth Circuit Court of Appeals ordered John Jr.'s attorneys *ad litem* and counsel for the Daughters to engage in mediation. The Sixth Circuit Court did not order Scott to participate in the mediation because he had not made an appearance in the appeal. The mediation resulted in a Settlement Agreement (the "Agreement") that was subject to the approval of the chancery court.

On July 15, 2020, the attorneys *ad litem* and the Daughters filed a Joint Motion to Approve Settlement Agreement in the Montgomery County Chancery Court pursuant to Tennessee Code Annotated § 34-1-121(b). Significantly, they attached the proposed Settlement Agreement to the motion to inform the chancellor of the specifics of the settlement, the protracted litigation that had already ensued, and John Jr.'s respective risks and rewards of settling or not settling the contentious and protracted family dispute.

The joint motion asserted that the settlement was in John Jr.'s best interest, would fully and finally resolve the dispute over Father's estate, and did not affect or impact Scott's legal interests regarding Father's estate. As such, the attorneys *ad litem* requested that the court determine whether the proposed terms were in John Jr.'s best interest and, if so, to approve it. Scott filed a Response in Opposition to Motion to Approve Settlement, arguing, *inter alia*, that the court lacked the authority to approve the Agreement because Scott had not agreed to the Agreement, and it was not in John Jr.'s best interest.

On October 1, 2020, the chancellor granted the Joint Motion to Approve Settlement Agreement. In response, Scott filed a Motion to Revise the Order or, In the Alternative, to Alter or Amend a Judgment and an Amended Response in Opposition to Motion to Approve Settlement. The motion was denied and this appeal followed.

**ISSUES**

The parties raise various issues for our consideration on appeal. We, however, have determined the dispositive issue on appeal is whether the chancellor presiding over the conservatorship of John Jr., abused its discretion by approving, pursuant to his authority

under Tennessee Code Annotated § 34-1-121, a mediated settlement agreement.[7] Scott also argues that the court erred by failing to include findings of facts and conclusions of law in the Order. For their part, the Daughters request an award of damages for defending Scott's frivolous appeal.

## STANDARD OF REVIEW

A court's determination of a ward's best interests is reviewed under an abuse of discretion standard. *In re Conservatorship of Muldoon*, No. E2019-01621-COA-R3-CV, 2020 WL 3469192, at *3 (Tenn. Ct. App. June 25, 2020) (citing *Crumley v. Perdue*, No. 01-A-01-9704-CH00168, 1997 WL 691532, at *2 (Tenn. Ct. App. Nov. 7, 1997)). "An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision." *Lee Medical Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citing *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007)). Thus, a court abuses its discretion "when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (alterations in original) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). "The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court." *Id.* (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998)).

---

[7] The issues of Appellant, Scott, were stated as follows:

1. Whether a Court can order the distribution of the entire property in a disputed estate through an alleged settlement agreement where on the of the beneficiaries and heirs (the Conservator-Appellant) did not agree to the settlement.
2. Whether a Court can force a settlement of a disputed estate through the consent of *ad litem* attorneys on behalf of a Conservatee when the settlement is not in the best interest of the Conservatee, and neither the Conservatee nor the Conservator agreed to such settlement.
3. Whether it is reversible error for a Court to purportedly end an estate dispute without a jury trial, much less a hearing, without findings of facts and conclusions of law, and over the filed objection of an heir and beneficiary to the estate.

The issue of Appellee, John Bruce Wilson, Jr., was stated as follows:

1. Whether the trial court ruled correctly when it exercised the power granted in Tenn. Code Ann. § 34-1-121(b) to approve and confirm the proposed compromise of the matters in controversy between John Bruce Wilson, Jr. and his sisters on the terms of the Settlement Agreement presented to the trial court.

The issues of Appellees Deborah French, Meredith Lounge, and Valarie Keating were stated as follows:

1. Did the trial court err by granting the Joint Motion to Approve Settlement Agreement?
2. Should Appellees be awarded damages for a frivolous appeal?

## ANALYSIS

### I. BEST INTEREST ANALYSIS IN CONSERVATORSHIP PROCEEDING

Scott contends the chancellor erred by granting the Joint Motion to Approve Settlement Agreement because the Settlement Agreement was not in John Jr.'s best interest. Scott argues that the Settlement Agreement contradicts Father's intent because John Jr. will receive a lesser portion of Father's assets than the Will and Trust provided.

The Daughters and John Jr.'s attorneys *ad litem* maintain that the Settlement Agreement is in John Jr.'s best interest because it settles all issues, claims, objections, and contests regarding Father's estate, the district court case, and the Sixth Circuit appeal. They also contend that the Agreement reduces the uncertainty and eliminates the risk that the federal appeal would not be decided in John Jr.'s favor.

In a conservatorship proceeding, the court has the authority to take all actions reasonably necessary to promote the ward's best interests. *In re Conservatorship of Groves*, 109 S.W.3d 317, 329 (Tenn. Ct. App. 2003). Specifically, Tennessee Code Annotated § 34-1-121, which details the court's authority in conservatorship proceedings, provides as follows:

> (b) In any action, claim, or suit in which a minor or person with a disability is a party or in any case of personal injury to a minor or person with a disability caused by the alleged wrongful act of another, the court in which the action, claim, or suit is pending, or the court supervising the fiduciary relationship if a fiduciary has been appointed, has the power to approve and confirm a compromise of the matters in controversy on behalf of the minor or person with a disability. ***If the court deems the compromise to be in the best interest of the minor or person with a disability, any order or decree approving and confirming the compromise shall be binding on the minor or person with a disability.***

(Emphasis added).

Notably, the legislature "has not outlined specific factors for the trial court to consider in making its best interest analysis," but this court has explained that in conservatorship cases, the determination of the ward's best interest must turn on "the specific facts presented in the particular case." *In re Conservatorship of Turner*, No. M2013-01665-COA-R3-CV, 2014 WL 1901115, at *25 (Tenn. Ct. App. May 9, 2014). "In order to determine the best interests of a disabled person, the court must consider all relevant facts." *Crumley*, 1997 WL 691532, at *3.

- 7 -

Here, the relevant facts and circumstances for the chancellor to consider were set forth in the Joint Motion to Approve Settlement Agreement as well as in Scott's Response in Opposition to Motion to Approve Settlement. The Daughters and John Jr.'s attorneys *ad litem* filed the entire Settlement Agreement with the chancellor for review. They set forth in their Joint Motion, *inter alia*, the following facts and circumstances to establish why the proposed Settlement Agreement was in John Jr.'s best interest:

1. All five of Father's children were beneficiaries of the Trust.

2. In the district court action, the Daughters contended that the testamentary provisions of the Trust were invalid.

3. All five children and, thus, all beneficiaries of the Trust were parties to the district court action.

4. Pursuant to its July 27, 2018 order, the district court ruled that the testamentary provisions of the Trust were invalid and the assets of the Trust would pass to the five children equally pursuant to the laws of intestate succession.

5. The district court's declaratory judgment that the testamentary aspects of the separate Property Trust are invalid is highly prejudicial to John Jr.'s best interests.

6. John Jr.'s attorneys ad litem appealed the district court's ruling to the United States Court of Appeals for the Sixth Circuit.

7. Scott did not appeal the district court's ruling that the testamentary provisions of the Trust were invalid and its declaration that the assets of the Trust would pass pursuant to the laws of intestate succession to the five children equally.

8. The Sixth Circuit Court of Appeals ordered the parties to participate in mediation.

9. Pursuant to its order entered on August 6, 2019, the chancery court authorized and directed John Jr.'s attorneys ad litem to, *inter alia*, negotiate and submit to the chancery court for approval proposed terms on which John Jr. may compromise and settle his appeal of the adverse district court judgment.

10. Tennessee Code Annotated § 34-1-121 affords the chancery court the discretion to approve a compromise of matters in controversy for a disabled person, such as John Jr., if it finds the compromise to be in his best interest and to make the settlement binding on the disabled person.

11. The proposed Settlement Agreement compromised and settled all claims and matters in controversy related to the interests of John Jr. and the Daughters in the Trust and Father's estate. The proposed Settlement Agreement also established terms for the distribution of the interests of John Jr. and the Daughters in the Trust.

12. The proposed Settlement Agreement provides John Jr. with certainty as to his interest in the assets of the Trust and his father's estate; it eliminates the risk that his appeal of the district court judgment will not be decided in his favor; provides that John Jr.'s share of the first proceeds from the sale of trust assets will be more than his one-fifth intestate share. Accordingly, the proposed settlement reduces John Jr.'s risk that his share will be reduced if the property sells for less than expected. It also provides that the proceeds from sale and income from the rental of those properties will be distributed to and held in an Irrevocable Trust for John Jr.'s benefit and managed by an independent trustee. Moreover, the proposed Settlement Agreement will end John Jr.'s participation in the litigation concerning the Trust as well as the attendant attorney's fees and costs of litigation.

The facts and circumstances set forth in the Joint Motion are fully supported by the record. Moreover, they provide bona fide reasons from which the court could conclude that entering into the Settlement Agreement was in John Jr.'s best interest. Notably, if John Jr. were to pursue his appeal of the district court's declaratory judgment, and the Sixth Circuit Court of Appeals were to affirm the judgment, John Jr.'s inheritance would be significantly reduced. Specifically, he would fall from receiving the largest share of his father's estate pursuant to the Trust to receiving an equal child's share of twenty percent. Moreover, he would continue to incur legal fees and costs as the already protracted litigation ensued, with no end in sight. Accordingly, the record fully supports the trial court's determination that entering into the proposed Settlement Agreement was in the best interest of John Jr.

With the deferential abuse of discretion standard of review in mind, this record provides no basis for us to conclude that the chancellor strayed beyond the applicable legal standards when considering the joint motion or that he failed to properly consider the factors customarily used to guide this discretionary decision. *See Lee Medical Inc.*, 312 S.W.3d at 524. In fact, the record reveals that the chancellor considered the relevant legal principles as set forth in Tennessee Code Annotated § 34-1-121. The record also provides a factual foundation that supports the chancellor's discretionary decision. Moreover, the abuse of discretion standard does not permit this court to substitute our judgment for that of the trial court. *See id.*

Accordingly, we find no basis to conclude that the chancellor abused his discretion in authorizing the attorneys *ad litem* to enter into and execute the Settlement Agreement on behalf of John Jr.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Scott also contends that the chancellor erred by failing to make findings of fact and conclusions of law in its Final Order. His argument is based upon Tennessee Rule of Civil Procedure 52.01 which requires the trial court to make written findings of fact and conclusions of law in "in all actions tried upon the facts without a jury." We, however, find his reliance on Rule 52 is misplaced because the challenged decision was rendered on a motion and findings of fact and conclusions of law are unnecessary on decisions of motions except as provided in Rules 41.02 and 65.04(6), which are not at issue here.

In pertinent part, Tennessee Rule of Civil Procedure 52.01 states: "[f]indings of fact and conclusions of law **are unnecessary on decisions of motions** under Rule 12 or 56 *or any other motion* except as provided in Rules 41.02 and 65.04(6)." Rule 41.02 deals with involuntary dismissal and Rule 65.04(6) deals with temporary injunctions, neither of which are relevant to this case. As such, the Joint Motion to Approve Settlement Agreement did not require the chancellor to separately state findings of facts and conclusions of law.

Thus, the chancellor did not err by failing to include findings of facts and conclusions of law in the Final Order.

## III. DAMAGES FOR FILING A FRIVOLOUS APPEAL

As a final matter, we acknowledge Daughters' request for damages from defending a frivolous appeal pursuant to Tennessee Code Annotated § 27-1-122, which states:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

"The decision whether to award damages for a frivolous appeal rests solely in our discretion." *Kramer v. Kramer*, No. E2018-00736-COA-R3-CV, 2019 WL 1239867, at *5 (Tenn. Ct. App. Mar. 18, 2019) (citing *Chiozza v. Chiozza*, 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009)). "A frivolous appeal is one that is 'devoid of merit,' or one in which there is little prospect that it can ever succeed." *Indus. Dev. Bd. of City of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995) (citations omitted). Based on our review of the record and in the exercise of our discretion, we decline to award damages for a frivolous appeal.

**IN CONCLUSION**

The judgment of the trial court is affirmed, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against Appellant, Bennett Gordon Scott Wilson.

_____
FRANK G. CLEMENT JR., P.J., M.S.